IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 14, 2008

Charles R. Fulbruge III
Clerk

No. 07-30958

MIRVAT BASSAM

Plaintiff - Appellant

V.

AMERICAN AIRLINES

Defendant - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana
USDC 3:06-CV-676

Before JOLLY, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Mirvat Bassam appeals the district court's grant of summary judgment in favor of American Airlines, Inc. ("American"). For the following reasons, we affirm.

I. FACTS AND PROCEEDINGS

On December 8, 2005, Bassam, a citizen of Lebanon, flew from Beirut, Lebanon to Baton Rouge, Louisiana, with stops in Paris, France and Dallas, Texas. The initial leg of her flight from Beirut to Paris was on Middle East

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Airlines and her remaining flights from Paris to Dallas and from Dallas to Baton Rouge were on American. In Beirut, Bassam checked two pieces of baggage. When she arrived in Dallas, Bassam received her baggage before entering through United States Customs. At that time, Bassam claims that her baggage was in good condition and contained all of their original contents. After inspection, customs officials returned her baggage, at which time Bassam handed them over to a person in a uniform at the conveyor belt for loading baggage. Bassam could not recall for whom this person worked. Bassam arrived in Baton Rouge as scheduled, but one piece of her baggage did not. Bassam immediately notified American, and an American employee at its main counter at the airport gave her a "Property Irregularity Receipt" as well as other documents necessary to record the loss. Bassam later submitted to American a "Baggage and Content Description" form, and a "Property Questionnaire" form, listing the contents of her lost baggage and claiming the value to be $5,434.00. Nearly four months later, in April 2006, American notified Bassam that her baggage had been found, and it delivered the baggage to the apartment complex where she was staying in Baton Rouge. Bassam claims that when she received her baggage, most valuable items were missing. Bassam attempted to obtain compensation from American informally, but her efforts were unsuccessful.

On August 3, 2006, Bassam filed suit in a Louisiana state court for lost baggage, seeking $5,434.00 in damages. On September 12, 2006, American removed the action to federal court based upon federal question jurisdiction, which Bassam did not oppose. On January 11, 2007, Bassam filed an amended complaint, in which she decreased her claim for lost baggage to $4,413.00[1] and added a claim for the "embarrassment and upset of not being able to dress and appear in public as was her prior practice" for $15,000.00. Bassam

---

[1] Bassam reduced her claim to reflect the value of the items that were recovered when she obtained her second piece of baggage from American.

acknowledged that the Montreal Convention governs her action and recognized that it limits damages for lost baggage up to 1,000 Special Drawing Rights ("SDR").[2] Bassam, however, argued that this limitation did not apply because (1) "the loss of [her] clothing, combined with the late delivery of over two months and the theft of most of its contents while in [American's] possession" was prima facie evidence of willful misconduct, and (2) she did not receive notice of the Montreal Convention's limitation of liability prior to her flight.

On July 31, 2007, American filed a motion for summary judgment. In its motion, American conceded responsibility up to the maximum amount of carrier liability for lost baggage under the limitation of liability (1,000 SDRs),[3] arguing that the limitation applied because Bassam had not alleged sufficient facts to demonstrate willful misconduct or show insufficient notice. American also argued that the Montreal Convention did not permit recovery for emotional distress damages. On September 18, 2007, the district court granted summary judgment in favor of American, finding that the limitation applied because Bassam had failed to set forth any competent summary judgment evidence to show willful misconduct and that notification, even if inadequate, did not affect carrier liability under the Montreal Convention. The district court also found that Bassam could not recover emotional distress damages under the Montreal Convention. As a result, on September 27, 2007, the district court entered final

---

[2] The SDR is an artificial currency, the value of which is established by a "basket" of currencies (the U.S. dollar, the Japanese yen, and the British pound). The value of a SDR in U.S. dollars is published daily by the International Monetary Fund.

[3] In December 2006, during the course of this litigation, American submitted an offer of judgment pursuant to Federal Rule of Civil Procedure 68 to Bassam for the U.S. dollar equivalent of 1,000 SDRs at that time. Bassam, however, rejected the offer.

judgment in favor of Bassam for $1,547.86 (the U.S. dollar equivalent of 1,000 SDRs on that date). Bassam appeals.[4]

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment in favor of American de novo. See Richardson v. Monitronics Int'l, Inc., 434 F.3d 327, 332 (5th Cir. 2005). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "We consider the evidence in a light most favorable to [Bassam], the non-movant, but she must point to evidence showing that there is a genuine fact issue for trial" in order to survive summary judgment. Richardson, 434 F.3d at 332.

## III. THE MONTREAL CONVENTION

The Montreal Convention, see Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, reprinted in S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000) [hereinafter Montreal Convention], was entered into force on November 4, 2003. It succeeded the Warsaw Convention, see Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [hereinafter Warsaw Convention], as the treaty exclusively governing the rights and liabilities of passengers and carriers in international air transportation. "The Montreal Convention . . . was the product of a United Nations effort to reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., 522 F.3d 776, 780 (7th Cir. 2008) (quoting

---

[4] Bassam does not appeal the district court's ruling as to the notification issue, and therefore this court does not address that issue in this opinion.

Ehrlich v. Am. Airlines, Inc., 360 F.3d 366, 371 n.4 (2d Cir. 2004)). "The Montreal Convention is not an amendment to the Warsaw Convention[,]" it takes "precedence over the Warsaw Convention and any of its amendments and related instruments." Ehrlich, 360 F.3d at 371 n.4 (internal quotations omitted). "The new treaty unifies and replaces the system of liability that derives from the Warsaw Convention, explicitly recognizing the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution." Sompo, 522 F.3d at 780–81 (internal quotations omitted). Even though the Montreal Convention is directed more at consumers, it does not alter the original goal of the Warsaw Convention of maintaining limited and predictable damage amounts for airlines. Id. at 781.

The Montreal Convention "applies to all international carriage of persons, baggage or cargo performed by aircraft for reward." Montreal Convention, art. 1(1). "International carriage" is defined as

> any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage . . ., are situated either within the territories of two States Parties, or within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party.

Id., art. 1(2). The incident giving rise to Bassam's claim took place on December 8, 2005, after the Montreal Convention became effective, on an international flight from Lebanon to Baton Rouge, via Paris and Dallas. Therefore, American's liability here, as recognized by both parties, is governed by the Montreal Convention.

Only four articles of the Montreal Convention are relevant here. Article 17 defines conditions for carrier liability for harm to passengers, including death or bodily injury and for loss or damage to checked baggage. Article 19 similarly defines conditions for carrier liability for damage caused by delay in the carriage

5

by air of passengers, baggage, or cargo. Articles 21 and 22 set forth a strict liability regime for fault of the carrier as to these damages, but place a limitation of liability for each type of claim. Article 22(5), however, provides a willful misconduct exception to this limitation.

## IV. DISCUSSION

### A. Lost Baggage Damages

Articles 17(2), 22(2), and 22(5) of the Montreal Convention govern claims for damages for lost baggage. Article 17(2) provides that a "carrier is liable for damage sustained in case of destruction or loss of, or of damage to, checked baggage" if the loss or damage occurred on board the aircraft or "during any period within which the checked baggage was in the charge of the carrier." Article 22(2), however, limits that liability for damages to 1,000 SDRs per passenger, unless the passenger has made a special declaration of interest in delivery at the destination and has paid a supplementary sum, if required, at the time baggage is checked. The discussion in the Letter of Submittal related to Article 22 provides that the article "generally preserves limits on liability in relation to delay, baggage, and cargo. These limits . . . follow precedents set by the Warsaw Convention, as amended by The Hague Protocol and Montreal Protocol Nos. 3 and 4."[5] 1999 WL 33292734, at *8. Article 22(5) removes the limitation of liability if "the damage resulted from an act or omission of the carrier, its servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result," provided that "such servant or agent was acting within the scope of its employment."

---

[5] Along with this statement in the Montreal Convention, courts have recognized that "[a]lthough the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention." Onwuteaka v. Nw. Airlines, Inc., No. H-07-0363, 2007 WL 1406419, at *1 n.2 (S.D. Tex. May 10, 2007).

Bassam argues that the district court erred in concluding that the Montreal Convention limits her damages for lost baggage to the U.S. dollar equivalent of 1,000 SDRs. She asserts that she has alleged facts sufficient to prove willful misconduct on the part of American and that she can therefore recover beyond that limitation.[6] Specifically, in her amended complaint, Bassam alleged that "the loss of [her] clothing, combined with the late delivery of over two months and the theft of most of its contents while in its possession, is prima facie evidence of actions on the part of [American's] personnel . . . that constitute 'reckless' and 'willful misconduct.'" Similarly, in her brief, she asserts, without citation to any evidence, that

> [t]he four (4) month delay in recovery of the luggage, allowing [her] personal belongings to be ransacked and stolen, compounded with [American's] refusal to take any meaningful steps to help [her] in an obvious time of need, makes [American's] actions much more egregious, certainly rising to the level of what any impartial traveler would consider "willful misconduct" . . . .

Bassam relies on Butler v. Aeromexico, 774 F.2d 429, 432 (11th Cir. 1985), for the proposition that willful misconduct is evaluated under an objective test. Bassam cites only Kupferman v. Pakistan International Airlines, 108 Misc. 2d 485 (N.Y. Civ. Ct. 1981), in support of her argument on the merits, and she characterizes the holding of that case to be that a fifteen-day delay in delivery of a plaintiff's baggage is sufficient to demonstrate willful misconduct under the Warsaw Convention.

Bassam's willful misconduct argument, however, lacks merit for many reasons. First, like the district court found, Bassam failed to set forth any competent summary judgment evidence that American's actions in losing her baggage constituted willful misconduct. Bassam instead rested on the

---

[6] Bassam never claims that she made a special declaration of interest at the time she checked her baggage. Thus, the only basis for her claim that she can recover above the limitation of liability is the willful misconduct exception.

allegations in her pleadings and failed to conduct any discovery on this issue. As she states in her amended complaint and brief, Bassam argues only that American's conduct constituted willful misconduct because the delivery of her baggage was delayed for four months and valuable items were missing when she received it. Nonetheless, without any evidence, Bassam cannot establish that the loss of, and damage to, the items in her baggage resulted from willful misconduct on the part of American in order to take the case outside the Montreal Convention's limitation of liability under Article 22(5). See Chukwuma v. Groupe Air France, Inc., 767 F. Supp. 43, 48 (S.D.N.Y. 1991) (providing that, under the Warsaw Convention, to presume willful misconduct "solely on the basis of the fact that some of his luggage was lost or stolen [is] a presumption that would severely undercut Article 22's limitations of liability"), aff'd, 962 F.2d 2 (2d Cir. 1992).

Second, Bassam erroneously suggests that a presumption/burden-shifting framework applies to the evaluation of willful misconduct. Bassam suggests that the loss of valuable contents of her baggage, combined with the four-month delay in delivery, constitutes prima facie evidence of willful misconduct on the part of American. Bassam, however, fails to cite any authority for this contention of law. To the contrary, the burden rests upon Bassam to prove the applicable facts that support the willful misconduct exception. The Fourth Circuit has noted that the plaintiff bears a "heavy burden of showing willful misconduct." Bayer Corp. v. British Airways, PLC, 210 F.3d 236, 239 (4th Cir. 2000) (internal quotations omitted). That court provided:

> The rationale for such a high threshold was explained by the District of Columbia Circuit—"It is not all that easy to avoid the Convention's limitations by establishing willful misconduct. . . . But the signatories obviously thought the economics of air travel . . . dictated those limitations. It simply will not do for courts to chip away at that liability limit, out of a natural desire to remedy the negligence that can be all too apparent in any individual case."

Id. (quoting Saba v. Compagnie Nationale Air France, 78 F.3d 664, 671 (D.C. Cir. 1996)). Therefore, Bassam has the burden to establish willful misconduct, but she failed to do so.

Third, Bassam's assertion that Butler requires that willful misconduct be evaluated under an objective test is a misstatement of law. Although Bassam relies on Butler, she fails to acknowledge that the Eleventh Circuit effectively overruled that case in Cortes v. American Airlines, Inc., 177 F.3d 1272, 1290 (11th Cir. 1999), where it announced a subjective test. When the Eleventh Circuit decided Butler in 1985, it considered the following language of the Warsaw Convention that is no longer in effect: "The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his willful misconduct . . . ." 774 F.2d at 430 n.1. Under that language, the Butler court adopted the test used by the District of Columbia Circuit in holding that willful misconduct "mean[s] 'the intentional performance of an act with knowledge that the . . . act will probably result in injury or damage' or 'reckless disregard of the consequences' or 'a deliberate purpose not to discharge some duty necessary to safety.'" Id. at 430 (quoting Koninklijke Luchtvaart Maatschappij N.V. v. Tuller, 292 F.2d 775, 778–79 (D.C. Cir. 1961)). The court then applied an objective test to the facts of the case in determining that the airline's actions constituted willful misconduct. Id. at 432. However, since Butler, Montreal Protocol No. 4 was entered into force in the United States on March 4, 1999, and it amended the Warsaw Convention and replaced the term "willful misconduct" in Article 25 with the following clarifying language: "The limits of liability specified in Article 22 shall not apply if it is proved that the damage resulted from an act or omission of the carrier, his servants or agents, done with intent to cause damage or recklessly and with knowledge that damage would probably result." See Montreal Protocol No. 4 to Amend the Convention for the Unification of Certain Rules Relating to

International Carriage by Air, signed at Warsaw October 12, 1929, as amended by the Protocol Done at the Hague on September 28, 1955, reprinted in S. EXEC. R. NO. 105-120, at 29 (1998) [hereinafter Montreal Protocol No. 4]. Based upon this amendment, the Eleventh Circuit held in Cortes in 1999, that Montreal Protocol No. 4 replaced the "less precise articulation set forth in Butler" and created a "subjective test" for evaluating willful misconduct. 177 F.3d at 1282–83, 1290–91. Moreover, in discussing Montreal Protocol No. 4 and the Warsaw Convention, the Fourth Circuit has provided:

> On a mens rea spectrum from negligence to intent, article 25's standard is very close to the intent end. Negligence will not suffice, nor even recklessness judged objectively. Rather, a plaintiff must show that a defendant either intended to cause the damage or acted recklessly with subjective knowledge that the damage would probably result. While an objective test asks whether an actor should have known of an obvious risk, the subjective test requires, at a minimum, a showing that the actor must have known of the risk.

Bayer Corp., 210 F.3d at 238–39 (internal quotations omitted). Importantly, the Montreal Convention adopted the language of the willful misconduct exception in Montreal Protocol No. 4, see Montreal Convention, art. 22(5), which makes Cortes and Bayer Corp. particularly relevant. Nonetheless, in asserting her argument under Butler, Bassam completely ignores Montreal Protocol No. 4 and Cortes and never attempts to argue that her allegations are sufficient to satisfy a subjective test for willful misconduct—the proper standard.

Finally, Bassam mischaracterizes the holding of Kupferman—a 1981 state trial court decision—the sole case upon which she relies to support her willful misconduct argument on the merits. Bassam asserts that the court there "ruled that the loss of luggage for the period of a fifteen (15) day vacation constituted willful misconduct on the part of the defendant airline." A review of this case, however, reveals Bassam's statement to be misleading. In Kupferman, the

plaintiffs flew to China on a group tour from June 20, 1978 to July 8, 1978, but the airline mislaid their baggage and did not return it to them until July 5 or 6, 1978. 108 Misc. 2d at 486–87. Because of this delay, the plaintiffs filed suit against the airline, requesting $4,066.00 in damages—the cost of the trip—for physical discomfort and mental anguish. Id. at 486. The plaintiffs argued that they could recover this amount under Article 19 of the Warsaw Convention because the limitation of liability in Article 25 did not apply given that the airline's actions constituted willful misconduct. Id. In support, the plaintiffs produced evidence that the airline

> (1) incorrectly ticketed plaintiffs' luggage for Karachi instead of Peking, (2) despite repeated requests by plaintiffs refused to correctly ticket the luggage, (3) refused to verify that the luggage was on the plane with plaintiffs from Karachi to Peking, (4) failed to retrieve luggage from Karachi for 15 days, and (5) gave self-serving false assurances through its agents and employees that subject luggage would be returned the next day.

Id. at 488. Based upon this evidence, the court determined that the airline's conduct constituted willful misconduct, and that, under New York law, the plaintiffs could recover beyond the limitation of liability. See id. at 489. In so finding, however, the court did not base its ruling solely on the fifteen-day delay; it instead considered the aforementioned evidence, which was significant. See id. at 488. Therefore, Bassam's case is factually distinguishable from Kupferman and of little, if any, use to her.

In sum, Bassam has no factual or legal support for her willful misconduct argument. As the district court found, the limitation of liability of the Montreal Convention applies to Bassam, thus her recovery is limited to $1,547.86 (the U.S. dollar equivalent of 1,000 SDRs on the date of judgment)[7] under Article 22(2).

---

[7] Article 23(1) states that the value of an SDR in national currency is to be determined "at the date of the judgment."

## B. Emotional Distress Damages

Although Bassam sought emotional distress damages in her amended complaint and the district court separately discussed and ruled on this claim in its summary judgment order, she does not specifically discuss this issue in her brief and confines her argument to the lost baggage claim. Therefore, we hold that Bassam has waived this argument for failure to brief in violation of Federal Rule of Appellate Procedure 28. See United States v. Jimenez, 509 F.3d 682, 693 n.10 (5th Cir. 2007) (holding that an issue not raised in appellant's brief as required by Rule 28 is deemed waived).

Nevertheless, even if we consider her claim for emotional distress damages, we hold that Bassam cannot recover under the Montreal Convention. Bassam alleged that she suffered emotional distress as a result of the delay in receiving her baggage and the discovery of the loss of valuable contents of her baggage. Her claim for $15,000.00 in emotional distress damages is based solely on the "embarrassment and upset of [her] not being able to dress and appear in public as was her prior practice." As the district court noted, however, Bassam has failed to provide any legal support for her contention that she can recover such damages.[8]

Because the Montreal Convention does not expressly provide for emotional distress damages and Bassam did not designate any specific provision for such recovery, she presumably attempts to recover them under Article 17 or 19. Article 17(1) provides that carriers are liable for damage sustained in case of

---

[8] Bassam's reference to Kupferman only related to the willful misconduct exception to the limitation of liability. However, even if she would have cited that case in support of her claim for emotional distress damages, as it allowed for such recovery, see Kupferman, 108 Misc. 2d at 489, it would not have supported her argument, given the Supreme Court's decision in Eastern Airlines, Inc. v. Floyd, 499 U.S. 530 (1991), which effectively overruled that case on that point. In Eastern Airlines, the Court held that Article 17 of the Warsaw Convention did "not allow recovery for purely mental injuries." Id. at 534. By extension, this court has applied the holding of Eastern Airlines to Article 19 of the Warsaw Convention. See Lee v. Am. Airlines, Inc., 355 F.3d 386, 387 (5th Cir. 2004).

death or bodily injury of a passenger caused by an accident either "on board the aircraft or in the course of any of the operations of embarking or disembarking." The Explanatory Note related to this article states:

> Following extensive debate, the Conference decided not to include an express reference to recovery for mental injury, with the intention that the definition of "bodily injury" would continue to evolve from judicial precedent developed under Article 17 of the Warsaw Convention, which uses that term. The Conference adopted the following Statement, recorded in the Minutes of the Proceedings:
>
>> With reference to Article 16 [sic], paragraph 1 of the Convention, the expression "bodily injury" is included on the basis of the fact that in some States damages for mental injuries are recoverable under certain circumstances, that jurisprudence in this area is developing and that it is not intended to interfere with this development, having regard to jurisprudence in areas other than international carriage by air . . . .

1999 WL 33292734, at *16 (citation omitted). As directed by the Montreal Convention, in looking to existing judicial precedent, courts have held that emotional injuries are not recoverable under Article 17 of the Montreal Convention or Warsaw Convention unless they were caused by physical injuries. See Ehrlich, 360 F.3d at 369–400; Booker v. BWIA West Indies Airways Ltd., No. 06-CV-2146, 2007 WL 1351927, at *4 (E.D.N.Y. May 8, 2007); see also E. Airlines, Inc. v. Floyd, 499 U.S. 530, 552–53 (1991) (holding that a carrier could not be held liable under Article 17 of the Warsaw Convention for mental injuries that did not accompany bodily injuries); Carey v. United Airlines, 255 F.3d 1044, 1051 (9th Cir. 2001) (holding that emotional and mental distress, even when accompanied by physical manifestations, are not recoverable under Article 17 of the Warsaw Convention). Bassam has not alleged any physical injury. Moreover, even if her claim of "embarrassment and upset" could be construed as such, that injury was not caused by an accident on board the aircraft or in the

13

course of embarking or disembarking. Therefore, Bassam has failed to establish carrier liability for emotional distress damages under Article 17(1).

Similarly, Articles 17(2) and 19 provide that a carrier is liable for damages caused by the loss of baggage and delay in the carriage of passengers and baggage. As American acknowledges, Bassam's emotional distress claim is with regard to the delay in providing her baggage and the loss of some of its contents. However, neither article nor any provision in the Explanatory Note related to these articles reference emotional distress damages for lost or delayed baggage. In considering these claims, courts have held that damages for purely emotional injuries are not available under the Montreal Convention. See Onwuteaka v. Nw. Airlines, Inc., No. H-07-0363, 2007 WL 1406419, at *1 (S.D. Tex. May 10, 2007); Booker, 2007 WL 1351927, at *4 n.6. Moreover, in evaluating a claim for emotional distress damages under Article 19 of the Warsaw Convention based upon the delay and cancellation of a flight, this court has held that "[m]ental injury damages are not recoverable under the Warsaw Convention." Lee v. Am. Airlines, Inc., 355 F.3d 386, 387 (5th Cir. 2004); see also Daniel v. Virgin Atl. Airways Ltd., 59 F. Supp. 2d 986, 992–94 (N.D. Cal. 1998) (holding that only economic loss or physical injury—not emotional distress—are damages recoverable under Article 19 of the Warsaw Convention). The Court of Appeals of Kentucky also rejected a claim for mental anguish damages related to lost baggage under the Warsaw Convention. See Trans World Airlines, Inc. v. Christophel, 500 S.W.2d 409, 411 (Ky. Ct. App. 1973). Therefore, Bassam cannot recover emotional distress damages under Articles 17(2) or 19. Accordingly, the district court did not err in finding that the Montreal Convention does not permit Bassam to recover emotional distress damages.

## V. CONCLUSION

14

For the foregoing reasons, the judgment of the district court is AFFIRMED.