# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 4, 2013

Lyle W. Cayce
Clerk

———

12-20836

———

CHRISTOPHER J. BRIDGEMAN; MARTIN A. BORGER,

Plaintiffs - Appellants,

v.

UNITED CONTINENTAL HOLDINGS, INC.; CONTINENTAL
AIRLINES, INC.,

Defendants - Appellees.

———

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12–CV–2848

———

Before SMITH, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal involves whether two airline travelers' state-law claims for intentional infliction of emotional distress, invasion of privacy, and negligence in connection with the airline's alleged placement of a sex toy on their baggage are preempted by Article 17(1) or Article 17(2) of the Montreal Convention. We hold that the plaintiffs' claims are not preempted by either. Accordingly, we REVERSE the district court's grant of the defendants' motion to dismiss and REMAND for further proceedings.

———

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-20836

I.

Because this is an appeal from a dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), these facts are taken from the pleadings and presented in the light most favorable to the plaintiffs. On May 21, 2011, Plaintiffs–Appellants Christopher J. Bridgeman and Martin A. Borger (collectively, "Plaintiffs") were returning to the United States on a flight provided by Defendants–Appellees United Continental Holdings, Inc. and Continental Airlines, Inc. (collectively, "United"). Plaintiffs flew from Costa Rica to Norfolk, Virginia, with a layover at George Bush International Airport in Houston. Upon arriving in Houston, Plaintiffs went through customs, rechecked their bags, and continued their trip to Norfolk.

After arriving at the Norfolk airport, Plaintiffs exited the aircraft and went to the baggage-claim area to retrieve their bags. As Plaintiffs' bags came around the carousel, they discovered, to their surprise and horror, that a sex toy had been removed from one of their bags, covered in a greasy foul-smelling substance, and taped atop the bag. After observing the bag and being extremely embarrassed by the surprised and laughing faces of onlookers, Plaintiffs called two friends who assisted them out of the airport and to their home.

As a result of this experience, Plaintiffs filed claims against United in Texas state court, asserting intentional infliction of emotional distress, invasion of privacy, and negligence. They asserted that the bag at all times, from when they checked the bag in Houston to the time it was sent out onto the carousel in Norfolk, was in the custody of United and that, during this time, one or more of United's employees had searched their bag, removed the toy, defiled it, and then taped it to the top of the bag. Plaintiffs alleged that these acts were directed towards them because they are homosexuals and male.

2

No. 12-20836

Finally, Plaintiffs alleged that, as a result of these actions, they suffered severe emotional distress and mental anguish requiring the help of mental health care professionals.  Plaintiffs did not allege that they suffered any physical injuries.  Nor did Plaintiffs seek to recover for damage to their bags.

United denied Plaintiffs' allegations and removed the case to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1441.  United then filed a motion to dismiss, arguing, as it does before this court, that (1) Plaintiffs' claims are preempted by Article 17 of the Montreal Convention, which, by treaty, defines conditions for carrier liability for injury to international passengers and damage to their baggage, and that (2) because the Montreal Convention does not provide a remedy for claims alleging only emotional damages, Plaintiffs have no basis for relief.

The district court granted United's motion to dismiss, agreeing with its preemption argument.  The district court reasoned that "because the suit does not set out facts or conduct establishing a claim for an alleged tort apart from the handling of their baggage, the pleadings are insufficient to support a non-preempted cause of action."  Plaintiffs timely appealed.

## II.

"We review a district court's dismissal under Rule 12(b)(6) *de novo*, accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc) (citation and internal quotation marks omitted).

## III.

The Montreal Convention, more formally known as the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, is a multilateral treaty entered into force on November 4, 2003.  2242 U.N.T.S. 309, *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734

(2000).    Like the Warsaw Convention, its predecessor, the Montreal Convention "governs the rights and liabilities of passengers and carriers in international air transportation." *Galbert v. W. Caribbean Airways*, 715 F.3d 1290, 1292 (11th Cir. 2013); *see also* 2242 U.N.T.S. at 350.    The Montreal Convention was intended to "reform the Warsaw Convention 'so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists.'" *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.*, 522 F.3d 776, 780 (7th Cir. 2008) (quoting *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2d Cir. 2004)).

In accordance with this objective, the Montreal Convention preempts state-law causes of action relating to the international carriage of persons, baggage, and cargo, but—critically for this case—only to the extent they fall within its substantive scope.    *See El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 172 (1999) (explaining that the Warsaw Convention's "preemptive effect on local law extends no further than the Convention's own substantive scope" and that carriers are "indisputably subject to liability under local law for injuries arising outside of that scope" (internal citations and quotation marks omitted)).    *Cf. Mbaba v. Societe Air Fr.*, 457 F.3d 496, 500 (5th Cir. 2006) (holding that the Warsaw Convention preempted the plaintiff's claims stemming from excess baggage fees because "[t]o hold otherwise would undermine the Convention's goal of uniformity").[1]

---

[1] Courts have frequently relied on cases interpreting the Warsaw Convention to interpret corresponding provisions of the Montreal Convention. *See, e.g.*, *White v. Emirates Airlines, Inc.*, 493 F. App'x. 526, 529 (5th Cir. 2012) (unpublished but persuasive) (stating that "[i]t is expected that [Article 17] will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments" (alterations in original) (citation omitted)); *Bassam v. Am. Airlines*, 287 F. App'x. 309, 313 n.5 (5th Cir. 2008) (unpublished but persuasive) (explaining that "[a]lthough the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal

No. 12-20836

Article 17 of the Montreal Convention contains two provisions relevant to this case: Article 17(1) imposes liability on carriers for injuries to passengers and Article 17(2) for damage to baggage. 2242 U.N.T.S. at 355. On appeal, Plaintiffs argue that their state-law claims do not fall within the scope of either provision. We agree and address each provision in turn.

A.

As stated by the Supreme Court, "[t]he interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellín v. Texas*, 552 U.S. 491, 506 (2008). Here, a straight-forward application of the text of Article 17(1) shows that it is inapplicable to Plaintiffs' claims.

Article 17(1) of the Montreal Convention states:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger *upon condition only that* the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

2242 U.N.T.S. at 355 (emphasis added). Accordingly, we must determine whether the alleged misconduct in this case took place "on board the aircraft or in the course of any of the operations of embarking or disembarking." In doing so, we look to the event that caused Plaintiffs' injury, rather than the occurrence of the injury itself. *See Air Fr. v. Saks*, 470 U.S. 392, 398 (1985) (explaining that the "text of Article 17 [of the Warsaw Convention] refers to an accident *which caused* the passenger's injury, and not to an accident which *is* the passenger's injury").[2]

---

Convention rely on cases interpreting similar provisions of the Warsaw Convention") (alteration in original) (citation omitted)); *see also, e.g., Phifer v. Icelandair*, 652 F.3d 1222, 1224 n.1 (9th Cir. 2011) (applying the Supreme Court's interpretation of Article 17 of the Warsaw Convention when analyzing Article 17 of the Montreal Convention).

[2] We express no view on whether the alleged misconduct in this case qualifies as an "accident" as the Supreme Court has interpreted that term. *See generally Olympic Airways v. Husain*, 540 U.S. 644, 652 (2004) (concluding that a flight attendant's actions were an "accident" because they were "unusual or unexpected in light of the relevant industry

No. 12-20836

Here, any connection between the alleged misconduct—the display of Plaintiffs' bag in the baggage-claim area—and the "operations of embarking or disembarking" is tenuous at best. As explained by the First Circuit, the phrase "in the course of any of the operations of embarking" "strongly suggests that there must be *a tight tie* between an accident and the physical act of entering an aircraft." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317 (1st Cir. 1995) (emphasis added). There is no such tight tie here: the events occurred in the baggage-claim area and were wholly unconnected to Plaintiffs' physical act of exiting the aircraft. *Cf. Marotte v. Am. Airlines, Inc.*, 296 F.3d 1255, 1260 (11th Cir. 2002) (applying the First Circuit's analysis in *McCarthy* to conclude that the plaintiff was "embarking" when his "party had their boarding passes in hand and were attempting to board the plane"); *Fedelich v. Am. Airlines*, 724 F. Supp. 2d 274, 284 (D.P.R. 2010) (applying the analysis used in *McCarthy* to conclude that the plaintiff was not disembarking when, at the time of the accident, the plaintiff was "free from [the airline's] direction, removed from the arrival gate, and in the baggage claim").

Therefore, Plaintiffs' claims are not preempted by Article 17(1) of the Montreal Convention.[3] *See Tseng*, 525 U.S. at 172 (explaining that under the Warsaw Convention carriers are "indisputably subject to liability under local law for injuries arising outside of [the scope of the Convention]: *e.g.,* for

---

standard or [the airline's] own company policy"); *Saks*, 470 U.S. at 406 (concluding that "liability under Article 17 of the Warsaw Convention arises only if a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger").

[3] This result is consistent with our unpublished decision in *Bassam*, where the plaintiff sought to recover, in part, emotional distress damages under Article 17 of the Montreal Convention in connection with the loss of items in her luggage. 287 F. App'x. at 317. In denying her claim on the merits, we reasoned that she could not establish carrier liability under Article 17(1) because her "injury was not caused by an accident on board the aircraft or in the course of embarking or disembarking." *Id.*

No. 12-20836

passenger injuries occurring before any of the operations of embarking or disembarking" (citation and quotation marks omitted)).

B.

As with our analysis of Article 17(1), our analysis of Article 17(2) of the Montreal Convention begins with its text:

> The carrier is liable for *damage sustained in case of destruction or loss of, or of damage to, checked baggage* upon condition only that the event which caused the destruction, loss or damage took place on board the aircraft or during any period within which the checked baggage was in the charge of the carrier.

2242 U.N.T.S. at 355 (emphasis added). Here, Plaintiffs' state-law claims rely on the fact that their bag was "in the charge of the carrier," and it is clear that their bag was not destroyed or lost. Thus, whether Article 17(2) preempts Plaintiffs' claims boils down to whether they seek a remedy for "damage to checked baggage."

We hold that they do not and that, therefore, Article 17(2) does not preempt Plaintiffs' state-law claims. The alleged misconduct in this case simply does not relate to any damage to Plaintiffs' duffel bag, which they admit is "just fine" and undamaged; rather, Plaintiffs seek a remedy for the way in which their bag was utilized to inflict personal injury. Accordingly, we decline to shoehorn Plaintiffs' claims into the substantive scope of Article 17(2) merely because a bag is central to their factual basis. Instead, we reach our conclusion based on a natural reading of Article 17(2)'s text.

IV.

For the reasons stated above, we REVERSE and REMAND to the district court.

7