**Martin H. MCCUBBINS, Plaintiff**

v.

**UNITED AIRLINES, INC.; United Continental Holdings, Inc.; fictitious defendant, William Black; fictitious defendant, Charles White; and fictitious Defendants A–M, Defendants**

Civil Action No. 3:16–cv–116 HTW

United States District Court,
S.D. Mississippi,
Northern Division.

Filed 03/22/2017

Signed March 21, 2017

Wayne E. Ferrell, Jr., Jackson, MS, for Plaintiff

John T. Rouse, McGlinchey Stafford, PLLC, Jackson, MS, for Defendant

## ORDER

HENRY T. WINGATE, UNITED STATES DISTRICT COURT JUDGE

Before this court are the following motions: 1) Plaintiff's "Motion to Remand" [**docket no. 7**]; 2) Plaintiff's "Supplement to Motion to Remand" [**docket no.27**]; and 3) Defendant's "Motion to Dismiss or Alternative Motion for Judgment on the Pleadings," [**docket no. 5**].

## I. FACTUAL BACKGROUND

The Plaintiff, Martin H. McCubbins (hereafter McCubbins), planned a trip to Panama with a friend. He purchased his ticket from United Airlines, Inc. One day prior to his flight, McCubbins attempted to check in and obtain his boarding pass through the United Airlines, Inc. website. He was informed that because his was an international flight, he would have to come to the ticket counter in person in order for his passport to be inspected and verified. On February 13, 2013, the morning of his flight, McCubbins went to the check-in counter of the Jackson–Medgar Wiley Evers International Airport, located near Jackson, Mississippi, as instructed.

McCubbins had a valid passport, but it was due to expire within six months. At the ticket counter a United Airlines, Inc. agent reviewed and verified his ticket and passport and issued him a boarding pass. McCubbins had to present his passport to United Airlines, Inc. agents several additional times over the course of the trip.

None of these agents informed McCubbins of any problem with his passport.

When McCubbins arrived at the airport in Panama he proceeded to customs, where he was informed that he would not be allowed to enter the country. His passport was the problem he was told: it was going to expire in six months or less, a fatal circumstance for international travel. Consequently, he was detained in the airport overnight in an isolated room with armed guards outside, no provisions for food and no accommodations for sleeping. The next morning, the Panamanian authorities placed him on a flight back to Jackson, Mississippi.

## II. PROCEDURAL BACKGROUND

### 1. McCubbins I

Prior to initiating the instant lawsuit, McCubbins filed a different suit against United Airlines Corporation (the incorrect corporate name for United Airlines, Inc.) in the First Judicial District of Hinds County Circuit Court, cause no. 25CI1:15–cv–025–WLK (hereafter *"McCubbins I"*). In that lawsuit, McCubbins sued United Airlines Corporation, alleging that the airline had failed to warn him that he would not be allowed into the country of Panama if his passport was due to expire within six months from the date of his flight. He accused the airline and certain of its employees, whose names were unknown at the time, of negligence, gross negligence and breach of contract under state law for failing to inform him of that fact. He did not plead any federal claims.

In that state court case, McCubbins obtained a default judgment against United Airlines Corporation. On February 2, 2016, United Airlines, Inc., (improperly named as United Airlines Corporation) removed that suit to the United States District Court for the Southern District of Missis-

sippi, Civil Action No. 3:16–cv–072 DPJ–FKB. On that same date, United Airlines, Inc., filed a motion in the federal court case to have the default judgment set aside, on the basis that Plaintiff had incorrectly designated the airline's corporate name in the complaint and summons.

The basis for removal, according to United Airlines, Inc., was federal question jurisdiction under 28 U.S.C. § 1331.[1] None of the parties claimed that federal jurisdiction was based on diversity of citizenship, because the amount in controversy was less than $75,000.[2] United Airlines, Inc., contended that a federal question was created because the Montreal Convention[3] and the Airline Deregulation Act[4] (hereafter "ADA") preempted Plaintiff's state law claims.

McCubbins filed a motion to remand the case to state court, alleging that no federal question was presented. Generally, under the "well-pleaded complaint rule," a federal court does not have jurisdiction unless a federal question appears on the face of the Plaintiff's well-pleaded complaint. *Elam v. Kansas City Southern Ry.*, 635 F.3d 796, 803 (5th Cir. 2011); *Caterpillar, Inc. v Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Ordinarily,

state law claims of negligence, gross negligence and breach of contract, such as Plaintiff asserted in *McCubbins I*, would not support original federal question jurisdiction; and as McCubbins pointed out, the complaint he filed made no reference to the Montreal Convention, the ADA, nor to any other federal or international laws or treaties on its face. [doc. no. 1–A].

An exception occurs, however, when a federal statute completely preempts a particular area such that any civil complaint raising this select group of claims is necessarily federal in character. *Id.* at 803. *West v. Fina Oil & Chemical Co.*, 128 F.Supp.2d 396 (E.D. Tex. 2001) (a case is removable if the area of law has been completely preempted by federal law). *Anderson v. Electronic Data Systems Corp.*, 11 F.3d 1311 (5th Cir. 1994) (complete-preemption doctrine allows defendant to remove case to federal court), *cert. denied*, 513 U.S. 808, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994). If complete preemption exists, as United Airlines, Inc. claims, it authorizes removal to federal court even in circumstances where the complaint has been pleaded in a way that artfully avoids mention of any federal law claims. *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012) (quoting

---

**1.** 28 U.S.C. § 1331 states:

**Federal Question**
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.

**2.** 28 U.S.C. § 1332 states:

**Diversity of Citizenship; amount in controversy; costs**
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs, and is between—

(1) Citizens of different States; . . .

**3.** Convention for the Unification of Certain Rules for International Carriage by Air, May

28, 1999, ICAO Doc. 9740, reprinted in S. Treaty Doc. 106-45, 1999 WL 33292734 (Treaty). Entered into force on November 4, 2003, it succeeded the Warsaw Convention, as the treaty governing the rights and liabilities of passengers and carriers in international air transportation. *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4 (2nd Cir. 2004).

**4.** 49 U.S.C. § 41713(b)(1) provides:

(b) Preemption.—(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority or at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

*Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000)).

In *McCubbins I*, Federal District Court Judge Daniel P. Jordan, III stated that the Fifth Circuit has held that the ADA does not provide complete preemption, citing *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925–26 (5th Cir. 1997). There, the Fifth Circuit Court of Appeals stated, "[t]his [the ADA's] preemption clause, standing alone, does not give rise to federal jurisdiction. *Id.* at 925. That Court went on to say, complete preemption occurs "only when Congress intends not merely to preempt a certain amount of state law, but also intends to transfer jurisdiction of the subject matter from state to federal courts." *Id.* at 925. *See Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48. Judge E. Grady Jolly, writing for the panel, concluded that Congress did not intend to completely preempt state law. Judge Jordan, writing for the federal district court, likewise concluded that McCubbins' state law claims were not completely preempted by federal law.

Whether the Montreal Convention was preemptive of McCubbins' state law claims, according to Judge Jordan, presented a more difficult question. The Montreal Convention succeeded the Warsaw Convention, as the treaty governing the rights and liabilities of passengers and carriers in international air transportation. *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366, 371 n.4. (2nd Cir. 2004). Judge Jordan did not find it necessary to decide the issue of whether the Montreal Convention provides complete preemption, since he determined that McCubbins' claims did not come within the purview of Article 19 of the treaty which is the section that United Airlines, Inc. cited as governing Plaintiff's claims.

McCubbins asserted that Article 19 deals only with passenger 'delay' and his complaint was not about 'delay'. *Benjamin v. American Airlines, Inc.*, 32 F.Supp.3d 1309, 1317 (S.D. Ga. 2014). Judge Jordan did not find the cases cited by the Defendant to be persuasive of Article 19's applicability to McCubbins' complaints of what the airline did wrong. In fact, they seemed to reinforce Plaintiff's position that Article 19 only applied to passenger 'delay', and that was not the issue before the court. The judge stated: "Because the Montreal Convention does not preempt McCubbins' state-law claims, no federal question exists, and this Court lacks subject-matter jurisdiction." [3:16–cv–072 docket no. 43 at p. 7]. The case was remanded to state court, where United Airlines, Inc. filed a motion to have the default judgment set aside. The Circuit Court of Hinds County denied the "motion to set aside the default judgment, quash process, and dismiss".[5] United Airlines, Inc. appealed to the Mississippi Supreme Court, where *McCubbins I* remains pending as *United Airlines, Inc. v. McCubbins*, 2017–TS–00154.

#### 2. McCubbins II

The instant case, (*McCubbins II*), was filed by McCubbins in an effort to ensure that the correct entity was being sued and to toll the statute of limitations. This case was originally filed in the First Judicial District of Hinds County Circuit Court, cause no. 25CI1:16–cv–0098–JAW. The principal parties are the same in *McCubbins I* and *McCubbins II*, but the new Complaint identifies United Airlines, Inc., by its correct corporate name and adds United Continental Holdings, Inc., as a defendant. Some additional fictitious defendants are named in both cases who

---

5. Hinds County Circuit Court cause no. 25CI1–15–025 doc. no.29 on the Mississippi

Electronic Filing system.

have not yet been served, and in some instances have not been identified. The Complaint contains essentially the same claims as were made in *McCubbins I*, with the one notable exception which will be discussed below. On February 16, 2016, United Airlines, Inc., and United Continental Holdings, Inc., (together, the "Defendants") removed this case to this federal district court.

This Court conducted a hearing on November 9, 2016, whereat the parties appeared, and this Court heard oral arguments. At the time of the hearing, *McCubbins I* had a motion pending before the Circuit Court of Hinds County, Mississippi. In that motion Defendants asked the Hinds County Circuit Court to set aside the default judgment in that case.

Because the first inquiry must be to determine whether this court has jurisdiction, the court will first consider the Plaintiff's "motion to remand" [docket no. 7] and "supplement to motion to remand" [docket no. 27] before considering the Defendants' "motion to dismiss or, in the alternative, for judgment on the pleadings" [docket no. 5].

## III. MOTION TO REMAND

### 1. Standard of Review

■ "[F]ederal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm*, 603 F.3d 290, 292 (5th Cir. 2010) (citation and quotation marks omitted). Removal raises significant federalism concerns, thus the removal statutes are strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Church v. Nationwide Ins. Co.*, No. 3:10-CV-636, 2011 WL 2112416, at *2 (S.D. Miss. May 26, 2011) (*citing Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008)); *see Williams v. Brown*, No. 3:11-CV-273, 2011 WL 3290394, at *3 (S.D. Miss. July 28, 2011) ("Doubts about whether federal jurisdiction exists following removal must be resolved against finding jurisdiction").

### 2. Law and Analysis

As previously discussed, the amount in controversy in this lawsuit is less than $75,000, so this court does not have jurisdiction based on diversity of citizenship. 28 U.S.C. § 1332. This Court must next decide whether this case presents a federal question, such that jurisdiction exists under 28 U.S.C. § 1331. The Plaintiff, McCubbins, contends that he has only raised claims under state law in his complaint and that no federal question is presented. The Defendants argue, as they did in *McCubbins* I, that Plaintiff's claims are completely preempted by the ADA and the Montreal Convention, creating federal jurisdiction. The Defendants additionally submit that Plaintiff's Complaint in *McCubbins II*, unlike that in *McCubbins I*, references federal laws and treaties, thereby stating federal claims on its face.

### A. The Complaint

■ The Court first looks at the issue of whether Plaintiff raised federal claims in the Complaint in this case. There is one significant difference between the Complaint in *McCubbins I* and the Complaint in the instant case, *McCubbins II*. Paragraph Nine of the first Complaint [3:16-cv-0072 docket no. 1–1 at p. 3] and Paragraph Ten of the Complaint in the instant case, [3:16-cv-0116 docket no. 1–1 at p. 3–4] begin with identical language. The Complaint in this case, however, includes additional language in Paragraph Ten, as appears below.

10. ....The ticket and boarding pass that were received by Mr. McCubbins; and the warnings (if any), restrictions (if any), requirements (if any),

and/or limitations (if any) alleged to be included by reference on the ticket and boarding pass were nonexistent or were phrased in such vague terms that the alleged warnings (if any), restrictions (if any), requirements (if any), and/or limitations (if any) to warn Mr. McCubbins that they inadequately warned or failed to warn him of the warnings, restrictions, requirements, and/or limitations of the ticket, boarding pass, and/or any other *State, Federal, or International treaties.* The alleged warnings, restrictions, requirements, and/or limitations were either not there or were so vague that any reliance thereon by the Defendants as a defense constitutes violations of *State laws, Federal laws, the Constitution of the State of Mississippi; and the Constitution of the United States of America.*

[docket no. 1–1] (emphasis added).

Defendant relies on this added language of the complaint to posit that McCubbins has raised new, federal causes of action. The court must now analyze this second complaint in light of this new language, to determine whether a federal question is presented on the face of the complaint.

This Court is not persuaded that it is. McCubbins is aggrieved by Defendants' failure to warn him about the restrictions and limitations pertaining to his travel, which is the crux of his allegations in Paragraph Ten above. These are claims grounded in negligence. The language in question does not assert any right of recovery under the federal Constitution or laws mentioned therein. The Plaintiff in the instant case has only raised state claims of negligence, gross negligence and breach of contract in his complaint.

 Even if Plaintiff has a federal claim available to him he is not required to plead it. The Plaintiff is the master of his complaint. *See Lincoln Property Co. v. Roche,* 546 U.S. 81, 126 S.Ct. 606, 163 L.Ed.2d 415

(2005); *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.,* 535 U.S. 826, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002); *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). The Plaintiff may raise such claims and omit such claims as he chooses. In *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) the United States Supreme Court stated, under the well-pleaded complaint rule, "the plaintiff is the master of the claim" and "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* at 392, 107 S.Ct. 2425 (as quoted in *Saffold v. Fortenberry,* 1998 WL 527276, N.D. Miss, No. 2:97–cv–256, *2; *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326 (5th Cir. 1995);

The last sentence of Paragraph Ten also does not state a federal claim; rather, as Plaintiff argued at the hearing, it is a statement anticipating the defense that Defendants would be expected to raise. It is a matter of longstanding jurisprudence that a possible federal defense does not give rise to a federal question for purposes of jurisdiction. *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 533 F.3d 321 (5th Cir. 2008); 533 F.3d 321 (anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction). *See Louisville & Nashville Railroad Company v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). (It is not enough that the Plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States to create federal jurisdiction).

This Court is persuaded that McCubbins has not raised a federal question on the face of his complaint. Therefore, the court must next inquire as to whether federal jurisdiction is created by complete pre-

emption of the ADA or the Montreal Convention.

## B. The Complete Preemption Doctrine

 Complete preemption is found only in extraordinary circumstances, where a "federal regulatory scheme is so extensive and comprehensive that it is possible to infer that Congress intended any related cause of action to be governed under federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). It requires a finding of Congressional intent "not merely to preempt a certain amount of state law, but to transfer jurisdiction of the subject matter from state to federal courts. Unless Congress manifests clear intention to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power. *Sam Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925 (5th Cir. 1997).

## C. The ADA and Preemption

The motion to remand and Defendants' response to the motion were filed in this case prior to Judge Jordan's decision in *McCubbins I*. After that decision was rendered, the Plaintiff filed a supplement to the motion to remand, [docket no. 27], based on Judge Jordan's ruling in *McCubbins I*. In that order, as discussed previously, the District Court Judge had determined that complete preemption did not apply to the ADA.

 In 1978, Congress enacted the ADA in the hopes that competitive market forces would result in lower airline fares and better airline service. *Morales v. Trans World Airlines, Inc.* 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157

(1992). To prohibit States from undoing federal deregulation with regulation of their own, a pre-emption provision was included.[6] Under 49 U.S.C. § 41713(b)(1), the States may not enact or enforce laws, regulations or other provisions having the force of law related to an air carrier's price, route or service. *Northwest, Inc. v. Ginsberg*, —— U.S. ——, 134 S.Ct. 1422, 1428, 188 L.Ed.2d 538 (2014).

In *Morales*, the United States Supreme Court held that the ADA pre-empted the use of state consumer protection laws to regulate airline advertising. *Id.* at 383, 112 S.Ct. 2031. Key to the Court's finding that preemption applied was the attempt to impose state consumer laws on the airline. Avoiding regulation of the airlines by the States represented a major reason for enactment of the ADA and its preemption provision. The *Morales* Court also concluded that there was a sufficient relationship between the advertising and those matters governed by the ADA. The Court there stated: a claim "relate[s] to rates, routes or services" within the meaning of the ADA if the claim "ha[s] a connection with, or reference to, 'airline rates, routes, or services.'" *Id.*, 504 U.S. at 384, 112 S.Ct. 2031.

*American Airlines, Inc. v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), decided a few years after *Morales*, considered the application of the ADA preemption provision to claims concerning an airline's frequent flyer program. Plaintiff, challenging the airline's devaluation of earned miles (largely because of 'blackout dates' and limits on available seats), brought claims under the Illinois Consum-

---

**6.** The preemption clause of the Airline Deregulation Act 49 U.S.C. § 41713 (b)(1) provides as follows;

(c) Preemption.—(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

er Fraud and Deceptive Business Practices Act and breach of contract claims. The United States Supreme Court, reaffirming *Morales*, held that the ADA preemption provision barred the claims based on the Illinois consumer statute; but, significantly, did not bar the breach of contract claims. The *Wolens* Court stated: "terms and conditions airlines offer and passengers accept ... are privately ordered obligations and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [the ADA pre-emption provision]." *American Airlines v. Wolens*, 513 U.S. at 228–29, 115 S.Ct. 817.

The Supreme Court's most recent pronouncement regarding preemption under the ADA was in *Northwest, Inc. v. Ginsberg*, —— U.S. ——, 134 S.Ct. 1422, 1428, 188 L.Ed.2d 538 (2014). There the Plaintiff contended that Northwest Airlines had wrongfully revoked his membership in the airline's frequent flyer program. Plaintiff filed suit, asserting breach of contract, breach of implied covenant of good faith and fair dealing, negligent misrepresentation and intentional misrepresentation. The federal district court found that the ADA preempted the breach of duty of good faith and fair dealing claim, but dismissed the breach of contract claim for unrelated reasons, without prejudice. Plaintiff appealed the dismissal of his breach of the duty of good faith and fair dealing claim, but not the breach of contract or the other claims.

The Court of Appeals for the Ninth Circuit reversed and remanded, finding that Plaintiff's claim was "too tenuously connected to airline regulation" to trigger preemption under the ADA. 695 F.3d at 873, 879 (9th Cir. 2012). Certiorari was granted by the United States Supreme Court. The first issue addressed by the *Ginsberg* Court was whether ADA preemption applies to a common-law rule such as implied covenant of good faith and fair dealing, or only to legislation or regulation enacted by a state legislature or agency. The Court held that preemption applies to common law provisions. The Court also determined that frequent flyer membership was sufficiently "related to rates routes or services," such that Plaintiff's claim might be preempted if other conditions are met.

The central issue, the Court said, was whether the implied covenant claim was based on a state-imposed obligation or simply one that the parties voluntarily undertook. The outcome turned on Minnesota's law regarding the implied covenant of good faith, which the Court decided was a state-imposed obligation. Not all such claims are doomed; nor are all such claims spared, the Court stated. Once again, the voluntariness of the agreement was the deciding factor. The United States Supreme Court stated: "We note, finally, that respondent's claim of ill treatment by Northwest might have been vindicated if he had pursued his breach-of-contract claim after its dismissal by the District Court." *Ginsberg* at 1433.

When confronted with breach of contract claims, the United States Supreme Court has found them not to be preempted. To date, the common law negligence claims as alleged in McCubbins' complaint have not been squarely addressed by the United States Supreme Court or the Fifth Circuit Court of Appeals. The Court is persuaded that McCubbins' claims are not preempted by the ADA.

D. The Montreal Convention and Complete Preemption

In *Bridgeman v. United Continental Holdings, Inc.*, 552 Fed.Appx. 294 (Nov. 4, 2013), two international airline passengers went to claim their baggage at the bag-

gage claim area, and were horrified to find that a sex toy had been removed from their bag, covered in a foul substance, and taped on top of the bag. The two filed claims against United Continental Holdings Inc., and Continental Airlines, Inc., in Texas State Court, asserting intentional infliction of emotional distress, invasion of privacy, and negligence.

In deciding whether their state law claims were preempted by Article 17(1)[7] or 17(2) of the Montreal Convention, the Fifth Circuit Court of Appeals held that the Montreal Convention only preempts state-law causes of action relating to the international carriage of person, baggage, and cargo, to the extent they fall within its substantive scope. *See El Al Isr. Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 172, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) (the Warsaw Convention's[8] preemptive effect on local law extends no further than the Convention's own substantive scope): *cf. Mbaba v. Societe Air Fr.*, 457 F.3d 496, 500 (5th Cir. 2006) (plaintiff's claims stemming from excess baggage fees were preempted, because to hold otherwise would undermine the Convention's goal of uniformity").

The *Bridgeman* Court began its analysis with the language of 17(1) and (2) of the Montreal Convention, which the airlines said were determinative of Plaintiffs' claims. Article 17(1) provides that the airline is liable in case of death or bodily

injury if the accident "took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Article 17(2) governs "destruction ... loss ... or damage ... to checked baggage." Whether Article 17 preempts the Bridgman Plaintiffs' claims, the Court said, "boils down to whether they seek a remedy for 'damage to checked baggage'." *Id.* at 298. The *Bridgeman* Court said they did not and, therefore, concluded that Article 17(2) did not preempt Plaintiffs' state law claims. The alleged misconduct did not relate to damage to Plaintiffs' duffel bag, but to how it was used to inflict personal injury.

In *McCubbins I*, Judge Jordan found it unnecessary to decide whether the Montreal Convention was preemptive, because he determined that Plaintiff's claims did not fall within the purview of Article 19, the section of the treaty that Defendants claimed to be applicable. Article 19 provides in its entirety:

> The carrier is liable for damage occasioned by delay in the carriage by air passengers, baggage or cargo. Nevertheless, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage or that it was impossible for it or them to take such measures.

---

7. Article 17(1) provides in in its entirety: "The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking. 2242 U.N.T.S.309 at 355, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

8. Courts have frequently relied on cases interpreting the Warsaw Convention to interpret corresponding provisions of the Montreal

Convention. See, e.g., *White v. Emirates Airlines, Inc.*, 493 Fed.Appx. 526, 529 (5th Cir. 2012) (unpublished but persuasive) "(it is expected that Article 17 will be construed consistently with the precedent developed under the Warsaw Convention and its related instruments"); *Bassam v. Am. Airlines*, 287 Fed. Appx. 309, 313 n. 5 (5th Cir. 2008) (unpublished but persuasive) (although the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention).

2242 U.N.T.S.309 at 355, reprinted in S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

This section, relied on by Defendants, has no application to McCubbins' grievances as stated in his complaint. Therefore, the Montreal Convention also does not preempt McCubbins' state law claims.

The issue of complete preemption is resolved in favor of the Plaintiff. Complete preemption does not exist and does not establish federal subject matter jurisdiction.

## IV. MOTION TO DISMISS

Having decided that this Court does not have subject matter jurisdiction of this lawsuit, it is not necessary to reach the defendants' motion to dismiss or for judgment on the pleadings.

## V. CONCLUSION

The Plaintiff's Complaint does not state a federal question on its face and federal jurisdiction is not created by preemption under either the Airline Deregulation Act or the Montreal Convention. Therefore, this Court does not have jurisdiction under 28 U.S.C. § 1331. Plaintiff McCubbins' Motion to Remand is **granted**. [**docket no. 7**]. His Supplement to Motion to Remand is commensurately **granted**. [**docket no. 27**]. This lawsuit is, thus, remanded to the First Judicial District of the Circuit Court of Hinds County, Mississippi, and any pending motions are remanded with it.

SO ORDERED AND ADJUDGED, this the 21st day of March, 2017.