# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CA-01092-SCT

*WESLEY HEALTH SYSTEM, LLC d/b/a WESLEY
MEDICAL CENTER*

*v.*

*ESTATE OF JACKIE KATHERINE LOVE,
DECEASED, EDWARD LAVONNE LOVE, AS
PERSONAL REPRESENTATIVE AND
EXECUTOR, ON BEHALF OF THE ESTATE OF
JACKIE KATHERINE LOVE, DECEASED, AND
EDWARD LAVONNE LOVE, CLARA GRACE
LOVE, A MINOR, AND HANNAH VICTORIA
LOVE, A MINOR, ALL INDIVIDUALLY AND AS
HEIRS AND WRONGFUL DEATH
BENEFICIARIES OF JACKIE KATHERINE
LOVE, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/21/2015 |
| TRIAL JUDGE: | HON. ANTHONY ALAN MOZINGO |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. ROBERT RAMSAY |
| ATTORNEY FOR APPELLEES: | SETH MAGILL HUNTER |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 09/15/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DICKINSON, P.J., LAMAR AND COLEMAN, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Edward Lavonne Love ("Love") filed a complaint against Wesley Health System,

LLC ("Wesley") alleging negligence, medical malpractice, and wrongful death of his wife,

Jackie Katherine Love ("Mrs. Love").[1] A default judgment was entered against Wesley. The trial court denied Wesley's motion to set aside the default judgment and entered a final judgment against Wesley awarding Love $1,784,715.18 in compensatory and punitive damages and attorney's fees.

¶2.     Because the trial court erred by prohibiting Wesley from cross examining the process server on the disputed issue of whether process was served upon Wesley's registered agent, we reverse and remand. Although the trial court's prohibition of cross examination was reversible error and dispositive to our decision, we further hold that the trial court also erred by failing to apply the three-part balancing test articulated by the Court in determining whether to set aside a default judgment. *See Woodruff v. Thames*, 143 So. 3d 546, 552 (¶14) (Miss. 2014). Accordingly, we reverse and remand with instructions consistent with the instant opinion.

## FACTS AND PROCEDURAL HISTORY

¶3.     On March 7, 2013, Mrs. Love was admitted to Wesley for gastrointestinal bleeding. On April 30, 2013, Mrs. Love underwent subtotal gastrectomy surgery. Following surgery, Mrs. Love contracted sepsis and passed away on May 13, 2013, while still in the care of Wesley. On January 16, 2015, Love filed a complaint alleging negligence, medical malpractice, and wrongful death against Wesley. Love retained Quantum Process Servers to serve process upon Wesley. On March 24, 2015, Terry Keith, a process server with

---

[1]  The complaint was filed in the name of Mrs. Love's estate, in Edward Lavonne Love's name as personal representative and administrator of Mrs. Love's estate, and in the names of the Loveses' two daughters, all individually and as Mrs. Love's heirs and wrongful death beneficiaries. The plaintiffs are collectively referred to as Love for clarity.

Quantum, allegedly served process upon Wesley's registered agent for service of process, CSC of Rankin County, Inc. ("CSC"). However, Wesley disputes that process was served upon its registered agent, CSC.

¶4. On March 25, 2015, Keith executed an affidavit of service stating that she served CSC with a copy of the summons, complaint, notice of service of discovery, first set of interrogatories, requests for production, and requests for admissions. According to the affidavit of service, Keith delivered the summons, complaint, and written discovery to Lorri Babb. Babb was identified as a paralegal with CSC, although she is actually a paralegal with the law firm of Watson & Jones. It is undisputed that CSC had authorized the law firm of Watson & Jones to accept service of process on its behalf.[2]

¶5. Wesley did not answer the complaint or otherwise defend for over thirty days. On May 12, 2015, Love filed an application for a clerk's entry of default, which the clerk entered that day. Also, on May 12, 2015, Love filed a motion for a default judgment. On May 15, 2015, Love filed a notice of hearing setting a hearing to determine damages for May 18, 2015. On May 15, 2015, the trial court signed a default judgment and fiat stating that a hearing to determine damages was set for May 18, 2015. On May 18, 2015, the trial court

---

[2] An affidavit executed by John Kevin Watson, managing partner of Watson & Jones, stated: "Since 2002, my firm has served as the authorized representative to accept service of process for CSC of Rankin County, Inc. at my office located at 2829 Lakeland Drive, Mirror Lake Plaza, Suite 1502, Jackson, MS 39232." Lorri Babb's affidavit also provided that Watson & Jones receives service of process addressed to CSC pursuant to an agreement between CSC and Watson & Jones. Neither party has raised and this opinion does not address the issue of whether a registered agent may authorize via appointment or agreement for another person or entity to act as its stead as registered agent.

entered a default judgment and fiat stating that a hearing to determine damages was set for that day.

¶6.    Also, on May 18, 2015, Love filed a motion to enlarge time to serve process. The motion offered no explanation why an enlargement of time to serve process was requested, other than stating that the time period to serve process was set to expire that day. Nonetheless, the trial court granted the motion and ordered that Love receive an additional 120 days to serve process. The trial court proceeded with a hearing where it received exhibits and heard testimony from Love's experts and Mrs. Love's husband in support of damages. On May 21, 2015, the trial court entered a final judgment awarding Love $2,034,715.18 in compensatory damages, $2.5 million in punitive damages, and $500,000 in attorney's fees for a total judgment of $5,034,715.18 against Wesley.

¶7.    On May 29, 2015, Wesley filed a motion to set aside the default judgment. Wesley contended that, on May 21, 2015, CSC received a copy of the default judgment and fiat, which it forwarded to Wesley the next day. The trial court clerk did not mail the default judgment and fiat to CSC until May 19, 2015, the day after the damages hearing was held. On May 26, 2015, CSC received a copy of the final judgment, and forwarded it to Wesley the next day.

¶8.    Wesley claimed that CSC had never been served with the summons and complaint, that CSC first received notice of the lawsuit on May 21, 2015, and that Wesley itself had first received notice of the lawsuit on May 22, 2015. Wesley argued that it had good cause for failing to answer the complaint, it had colorable defenses to Love's claims, and that Love was

4

not prejudiced by Wesley's failure to answer. Wesley also disputed the propriety and legality of the damages award. Wesley attached affidavits disputing service of process and itemization of charges relating to the hospital stay to its motion.

¶9.     An affidavit of Andrew M. Gachaiya, project manager in the CSC legal department stated that CSC first received notice of the lawsuit on May 21, 2015. Gachaiya explained that CSC has a detailed process for recording service made upon it, and CSC had no record of receiving the summons and complaint allegedly served upon Babb.

¶10.    On June 26, 2015, Wesley filed an affidavit executed by Babb. Babb disputed that she received service of process. Babb stated: "I have no memory of receiving any SOP [on March 24, 2015], or any memory of having ever received [service of process] from Ms. Keith. I do not believe that I received the Love [service of process]." Babb stated that although she was not primarily responsible for receiving service of process, she would occasionally receive service of process on behalf of CSC. Babb explained the procedure for receiving service of process. Babb also verified that she could not locate any physical or electronic record of ever receiving the summons and complaint. Babb stated that she was "confident that [she] did not receive the [service of process] because there [were] no records of the receipt or processing of that [service of process] in any of the places where would records would have been created and maintained."

¶11.    On June 29, 2015, a hearing was held on Wesley's motion to set aside the default judgment. At the outset, counsel for Love asked for a continuance so that he could subpoena Babb for the purpose of cross examining her. The trial court found that a "substantial part

5

of [Love's] argument in defending [the motion to set aside the default judgment]" depended on being able to cross examine Babb and granted a continuance. On July 8, 2015, Wesley filed an affidavit of John Kevin Watson, managing partner of Watson & Jones. Watson stated that after performing a thorough search of his firm, he had not found any record whatsoever of receipt of service of process.

¶12. On July 10, 2015, the trial court resumed the hearing. Counsel for Wesley proceeded with his argument and attempted to call Babb to the stand, but the trial court interrupted. Instead, the trial court called Keith to the stand and carried out its own examination. Keith testified that she normally serves a different person than Babb, and asked her if she was authorized to receive service of process. Keith testified that Babb answered that she was authorized. Keith testified that she obtained Babb's name and position, told her that she did not have to sign anything, and served her with process. The trial court then told Keith that she could step down from the stand.

¶13. At that point, Wesley's counsel interjected and requested to cross examine Keith, but the trial court refused. Although the trial court indicated that it would allow counsel for Wesley an opportunity later in the hearing to cross examine Keith, the trial court immediately announced: "The [trial court] finds credible testimony under oath and assumes, or presumes . . . that process was served on the registered agent for [Wesley]." After making the finding, the trial court requested that counsel present arguments on the three-part balancing test in determining whether to set aside a default judgment.

¶14.    After Wesley and Love completed their arguments on the three-part test, the trial court ultimately reserved its ruling.  On July 13, 2015, the trial court denied Wesley's motion to set aside the default judgment, and entered a final judgment.  The trial court concluded that Wesley was served with process upon its registered agent, CSC.  In lieu of applying the three-part balancing test, the trial court's final judgment stated:

> The [trial court] finds that setting aside a judgment is reserved for extraordinary circumstances collateral to the merits of the case. *See Ice Plant*[] *Inc. v. Grace*, 133 So. 3d 379, 382 (¶6) (Miss. Ct. App. 2014).  Only when circumstances are extraordinary and collaterally related to the merits of the case may a court consider the [d]efendant's 'colorable defenses', [p]laintiff's prejudice, and 'good cause' for setting the judgment aside.  The circumstances surrounding [Wesley's] failure to answer the complaint are not extraordinary.  Defendants in civil cases commonly fail to answer complaints.  Furthermore, even if the circumstances of this Defendant's failure to answer are deemed extraordinary, they are clearly not collateral to the merits of the case.

The trial court determined amount of damages were excessive and reduced them to $500,000 in non-economic damages, $250,000 in attorney's fees, $500,000 in punitive damages, and $534,715.18 in compensatory damages, for a total judgment of $1,784,715.18 against Wesley.

¶15.    Wesley appeals raising the following assignments of error: (1) whether the trial court erred in finding that service of process was proper; (2) whether the trial court erred by failing to apply the three-part balancing test; (3) alternatively, whether the trial court erred in its application of the three-part test; (4) whether the damages were proper; (5) whether equity supports vacating the default judgment.  The first issue is dispostive, however, we will address the second assignment of error because the issue may be broached again on remand.

7

**DISCUSSION**

**I.      The trial court erred by prohibiting cross examination of the process server.**

¶16.      "Sufficiency of service of process is a jurisdictional issue, which is reviewed de novo*." **BB Buggies Inc. v. Leon**, 150 So. 3d 90, 95 (¶6) (Miss. 2014). "A court must have jurisdiction, proper service of process, in order to enter a default judgment against a party. Otherwise, the default judgment is void. If a default judgment is void, the trial court has no discretion and must set the judgment aside." **McCain v. Dauzat**, 791 So. 2d 839, 842 (¶7) (Miss. 2001).

¶17.      Mississippi Rule of Evidence 611 controls the mode and order of witness questioning. Rule 611(b) entitles counsel conducting cross examination to "broad discretion in the subject matter of the questioning." **Culp v. State**, 933 So. 2d 264, 273 (¶ 33) (Miss. 2005) (citing **Craft v. State**, 656 So. 2d 1156, 1162 (Miss. 1995)). The trial court has "discretion to restrict that latitude when the subject matter of questioning has no relevance." **Id.** In the instant case, the trial court prohibited cross examination of Keith altogether on the sharply disputed issue of whether process had been served upon CSC.

¶18.      In **Mississippi Ice & Utilities Co. v. Pearce**, 161 Miss. 252, 134 So. 164, 167 (1931), the Court held that "[n]o witness, offered by either side, be he prince, potentate, physician, judge, or private citizen, is exempt from the right of fair cross-examination in this state." A party is deprived of the right of cross examination when the "trial court fundamentally and substantially restricts it," which means "that the party is deprived of the opportunity without

8

fault on their part." ***Culp***, 933 So. 2d at 276 (¶33) (citing ***Murphy v. State***, 453 So. 2d 1290, 1292 (Miss. 1984); ***Myers v. State***, 296 So. 2d 695, 701 (Miss. 1974)).

¶19.    At the first hearing on Wesley's motion to set aside the default judgment, the trial court appropriately preserved Love's request for the opportunity to cross examine Babb on the disputed issue of service of process by granting a continuance. At the second hearing however, Wesley's request to cross examine Keith on the disputed issue of service of process was denied entirely.

¶20.    We reject Love's argument that the issue of cross examination is waived because Wesley did not "object contemporaneous with the [trial court's] examination of Mrs. Keith (or anytime thereafter) as to the questions asked or the course of action taken by the [trial court], or place in the record during the proffer what purported damning information it thought it might pry from Mrs. Keith." Although the trial court indicated that it would allow cross examination of Keith later in the hearing, it immediately made a finding of fact that service of process was proper. As a result, Wesley was completely deprived of its right to cross examine Keith on the critical and disputed issue of service of process. By cutting off Wesley's request to question Keith entirely, the trial court failed to fulfill its burden to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to make those procedures effective for determining the truth[.]" M.R.E. 611(a)(1).

¶21.    The return of process executed by Keith is presumed to be correct. ***Dauzat***, 791 So. 2d at 842 (¶8). Here, the only evidence supporting Love's claim that process was served on

9

CSC was that of Keith herself, including the affidavit of service she executed. Without any cross examination of Keith, much less any examination of any of Wesley's witnesses prepared to testify for the purpose of disputing Keith's testimony, Wesley was prevented from attempting to rebut the presumption that process had been served. As a result, the Court finds itself in possession of an incomplete record.

¶22. The Court has expressed the importance of preserving a party's right of cross examination:

> It is of the utmost importance in the administration of justice that the right of cross-examination be preserved unimpaired. It is the law's most useful weapon against fabrication and falsehood. As a test of the accuracy, truthfulness, and credibility of testimony, there is no other means as effective. . . . [T]he privilege should not be interfered with or hampered or restricted by the trial judge, except in clear case of irrelevancy, trespass beyond admissible ground, or extremes of continual, aimless repetition.

*Prewitt v. State*, 156 Miss. 731, 126 So. 824, 825 (1930). The trial court's prohibition of the cross examination of Keith against Wesley's explicit request constitutes reversible error. On remand, the trial court must preserve Wesley's right to cross examine Keith on the disputed issue of service of process.

**II.    The trial court abused its discretion by failing to apply the three-part balancing test in determining whether to set aside the default judgment.**

¶23. Because it is apparent that the trial court did not apply the three-part balancing test after erroneously concluding that service of process was proper, we briefly address the second assignment of error.

¶24. "In deciding whether to set aside a default judgment, the trial court must consider (1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the

10

defendant has good cause for default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside." ***American States Ins. Co. v. Rogillio***, 10 So. 3d 463, 468 (¶10) (Miss. 2009) (citations omitted). Indeed, "the trial court *must* employ the three-part balancing test when deciding whether to set aside a default judgment, and this Court must strike the same balance when determining whether the trial court abused its discretion in making that decision." ***Flagstar Bank, FSB v. Danos***, 46 So. 3d 298, 306-07 (¶28) (Miss. 2010).

¶25.  Even if the trial court had allowed cross examination of Keith on the issue of whether Wesley had been properly served, it is apparent that the trial court abused its discretion in failing to employ the three-part balancing test as articulated by the Court in ***Rogillio***. As evidenced by the trial court's final judgment, it did not reach the three-part balancing test in deciding whether to set aside Wesley's motion to set aside the default judgment. The trial court's final judgment, citing the Mississippi Court of Appeals decision in ***Ice Plant Inc. v. Grace***, 133 So. 3d 379, 382 (¶6) (Miss. Ct. App. 2014), found that "only when the circumstances are extraordinary and collaterally related to the merits of the case may a court consider the [d]efendant's 'colorable defenses', [p]laintiff's prejudice, and 'good cause' for setting the judgment aside." Because the trial court found that the circumstances surrounding Wesley's failure to answer the complaint were not "extraordinary," it declined to apply the three factors. This conclusion was a misreading of ***Ice Plant***, because the court found that "[t]he trial judge in the present case properly considered the three prongs of the balancing

test regarding whether to grant relief under Rule 60 and found nothing to warrant setting aside the judgment against Ice Plant." *Id*. at 383 (¶8).

¶26. The parties thoroughly briefed and argued the three-part balancing test in the trial court as well as on appeal. In *Kumar v. Loper*, 80 So. 3d 808, 816 (¶31) (Miss. 2012), the Court unequivocally stated: "[W]e can state with certainty that, if the trial [court] failed to apply the test, [it] abused [its] discretion." We caution the trial court that on remand, a failure to apply the three-part balancing test would constitute an abuse of discretion if it were to find that Wesley was properly served with process.

**CONCLUSION**

¶27. On remand, the trial court must preserve Wesley's right to cross examine the process server before it determines the threshold issue of whether service of process was proper. If the trial court finds that service of process was proper, then it must apply the three-part balancing test articulated by the Court in determining whether the default judgment should be set aside.

¶28. **REVERSED AND REMANDED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, KING AND MAXWELL, JJ., CONCUR. BEAM, J., NOT PARTICIPATING.**