# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-00154-COA

UNITED AIRLINES, INC., IMPROPERLY NAMED AS UNITED AIRLINES CORPORATION

APPELLANT

v.

MARTIN H. MCCUBBINS

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/25/2015 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | JOHN THOMAS ROUSE |
| ATTORNEY FOR APPELLEE: | WAYNE E. FERRELL JR. |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 04/17/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.     Martin McCubbins bought a round trip ticket from Jackson to Panama City, Panama on United Airlines (United).  McCubbins alleges that on February 6, 2013, before he departed Jackson and again during a layover in Houston, United employees examined his passport and ticket and assured him that everything was in order.  Nonetheless, when McCubbins arrived in Panama, he was detained and informed that he would not be allowed to enter the country because his passport's expiration date was less than 90 days from the date of his travel.  McCubbins was forced to spend an unpleasant night in a Panamanian

holding pen before he was allowed to return to the United States the next morning.

¶2.    After returning home, McCubbins contacted customer service representatives at United, but United told him that he was responsible for verifying the requirements for international travel and entry into a foreign country. United did give McCubbins a coupon for ten percent off his next ticket to fly the friendly skies. Dissatisfied with blame and a coupon, McCubbins filed suit against United in Hinds County Circuit Court.

¶3.    McCubbins served a summons and the complaint on United's registered agent for service of process in Mississippi, CT Corporation (CT). Unfortunately, the complaint named the defendant as "United Airlines Corporation," an Illinois corporation "with a principal place of business located at 1200 East Algonquin Road, Elk Grove Township, IL." This information was out of date or just incorrect. In point of fact, United is "United Airlines, Inc.," a Delaware corporation with its principal place of business at 233 South Wacker Drive in Chicago. Because the summons and complaint misnamed United, CT did not forward the documents to United, United did not answer, and McCubbins ultimately obtained a default judgment against "United Airlines Corporation" for $70,000.

¶4.    United first learned of the judgment when McCubbins's attorney mailed a letter demanding payment to United's CEO at United's headquarters on South Wacker Drive in Chicago. United subsequently moved to set aside the default judgment,[1] arguing that the

---

[1] Two weeks after United received the letter from McCubbins's attorney, United removed the case to federal district court. United argued that federal question jurisdiction existed because McCubbins's claims were "completely preempted" by the Airline

2

judgment (1) was void for lack of proper service of process or, in the alternative, (2) should be set aside under the three-part "balancing test" applicable to a motion to set aside a default judgment under Mississippi Rule of Civil Procedure 60(b). *See Tucker v. Williams*, 198 So. 3d 299, 309 (¶23) (Miss. 2016). The circuit court denied United's motion as "not well taken."

¶5. On appeal, United makes the same two arguments as in the circuit court. We hold that service of process on United's registered agent was sufficient. However, we agree with United that the default judgment must be set aside under the three-part balancing test. Therefore, we reverse and remand for further proceedings consistent with this opinion. Additional facts are discussed below as necessary.

**ANALYSIS**

---

Deregulation Act and/or the Montreal Convention, an international multilateral treaty to which the United States is a party. The same day that United removed the case to federal court, United also filed a motion to set aside the default judgment. Three days later, McCubbins filed a second lawsuit against United in Hinds County Circuit Court ("*McCubbins II*"). The complaint in *McCubbins II* was essentially identical to McCubbins's prior lawsuit ("*McCubbins I*") except that it correctly named and identified "United Airlines, Inc." as the defendant. United removed *McCubbins II* to federal court based on the same "complete preemption" arguments. *McCubbins I* and *McCubbins II* were assigned to different district judges; however, both judges ultimately rejected United's complete preemption arguments. *McCubbins v. United Airlines Inc.*, 227 F. Supp. 3d 654, 657-58 (S.D. Miss. 2016) (Jordan, J.); *McCubbins v. United Airlines Inc.*, 244 F. Supp. 3d 557, 567 (S.D. Miss. 2017) (Wingate, J.). *McCubbins I* was remanded to state court and is the subject of this appeal. We are told that *McCubbins II* has not yet been formally remanded to state court. The removals, remands, and *McCubbins II* are, for the most part, irrelevant to the issues presented in this appeal. Therefore, they are only discussed below to the limited extent they are relevant.

3

## I. SERVICE OF PROCESS

¶6.     United's first argument on appeal is that service of process was improper and ineffective because the summons and complaint named "United Airlines Corporation," not United Airlines, Inc., and misidentified United's state of incorporation and address. "In the absence of proper service of process, the court lacks jurisdiction, so any default judgment that it enters is void." *S & M Trucking LLC v. Rogers Oil Co. of Columbia*, 195 So. 3d 217, 221 (¶16) (Miss. Ct. App. 2016). "If a default judgment is void, the trial court has no discretion and must set the judgment aside." *McCain v. Dauzat*, 791 So. 2d 839, 842 (¶7) (Miss. 2001). "Sufficiency of service of process is a jurisdictional issue, which is reviewed de novo." *BB Buggies Inc. v. Leon*, 150 So. 3d 90, 95 (¶6) (Miss. 2014).

¶7.     McCubbins filed his complaint alleging negligence and breach of contract in circuit court on January 16, 2015. As noted above, the complaint misidentified United as "United Airlines Corporation," an Illinois corporation with a principal place of business in the Chicago suburb of Elk Grove Township. In fact, United is "United Airlines, Inc.," a Delaware corporation with its principal place of business in downtown Chicago.

¶8.     McCubbins did, however, serve a summons and the complaint on United's registered agent for service of process in Mississippi, CT. The summons and complaint were served personally on Matthew Thiebodeaux, an employee of CT, on February 12, 2015, by Melissa Rand, an employee of McCubbins's attorney, Wayne Ferrell. Rand and Thiebodeaux knew one another by name because she regularly served process on CT.

4

¶9. In addition, Exhibit A attached to the complaint served on CT is the eTicket itinerary and receipt issued by United to McCubbins. Notably, the ticket was sent to McCubbins from "United Airlines, Inc."

¶10. United failed to answer the complaint, so McCubbins applied for and obtained an entry of default. McCubbins then filed a motion for a determination of damages and entry of final judgment. On November 25, 2015, the circuit court entered judgment in favor of McCubbins and against "United Airlines Corporation" for $70,000, including actual damages of $50,000 and punitive damages of $20,000. On January 8, 2016, Ferrell mailed United's CEO a letter—at United's correct, downtown Chicago address—demanding payment.

¶11. We pause our discussion of the case's procedural history here to discuss other evidence related to McCubbins's service of process on United's registered agent, CT. An affidavit from a CT employee states that CT's records show that CT sent Ferrell a letter by regular mail on February 13, 2015—i.e., the day after McCubbins served CT. The letter advised as follows: "United Airlines Corporation was not listed on our records or on the records of the State of MS. CT was unable to forward." An affidavit from an employee in United's legal department confirms that United did not receive notice of the lawsuit, from CT or otherwise, until Ferrell's January 2016 letter to United's CEO.

¶12. The record copy of the February 13, 2015 letter from CT to Ferrell is not signed; however, CT states that such letters are sent out automatically and are not signed. Ferrell denied under oath that he ever received the letter. In addition, the letter purports to show that

CT mistakenly sent a copy of the letter to the Hinds County *Chancery* Court; however, the chancery clerk provided an affidavit stating that the court has no record of receiving such a letter. Nor is there any evidence that the circuit court ever received such a letter.

¶13. In opposition to United's motion to set aside the default judgment, McCubbins also submitted copies of CT's policies and procedures for handling "name discrepancies" in documents served on CT. McCubbins obtained these documents from CT by subpoena. These documents suggest that if CT had followed its own policies and procedures, it would have identified United as the likely defendant and forwarded the complaint and the summons to United.

¶14. In the circuit court, United also submitted a number of its filings with the Mississippi Secretary of State, which show its correct corporate name and state of incorporation and the current address of its principal place of business. On appeal, United argues that "[t]his Court may take judicial notice of [such] records." We agree. We also note that annual reports that United filed with the Secretary of State as recently as 2008 showed that 1200 East Algonquin Road in Elk Grove Township *was* United's principal place of business. United apparently moved its headquarters to downtown Chicago around that time. Thus, the address referenced in McCubbins's complaint was out of date, but it was not pulled out of thin air.

¶15. Our Supreme Court has addressed the concept of a "misnomer" in several prior opinions. In *Campbell & Campbell v. Pickens Bank*, 134 Miss. 559, 565, 99 So. 378, 378-79 (1924), a writ of garnishment and summons directed to the "Bank of Pickens" were served

on the cashier for the "Pickens Bank." The "Bank of Pickens" had been defunct for several years. *Id.* at 565, 99 So. at 380. The "Pickens Bank" was the intended garnishee, but it was misnamed in the writ and summons. *Id.* After a default judgment was entered against the Pickens Bank, the bank moved to set aside the judgment, arguing that it was not properly served with process. *Id.* at 565-66, 99 So. at 379. The cashier denied that he was served, but after hearing testimony, the chancellor found as fact that the cashier was served. *Id.* at 567, 99 So. at 379. Even so, the Pickens Bank argued that service was ineffective because it was not the entity named in the writ and summons. *Id.* at 566, 99 So. at 379. On appeal, our Supreme Court disagreed. *Id.* at 568, 99 So. at 380. The Court held that service was proper and that one summoned by a wrong name has a duty "to appear and object to the misnomer"; and if he fails to do so, the judgment is not void merely on account of the misnomer. *Id.*

¶16.    The Supreme Court later distinguished *Pickens Bank* in *Delta Cotton Oil Co. v. Planters' Oil Mill*, 142 Miss. 591, 107 So. 764 (1926). In *Delta Cotton Oil*, the summons was served on a man who served as an agent for two entities with similar names, and the summons failed to correctly and precisely name either entity. *Id.* at 596-97, 107 So. at 764. Moreover, on the particular underlying facts of that case, the judgment could have been "applied to one as readily as to the other." *Id.* at 601, 107 So. at 767. The Supreme Court held that in that situation there was "such uncertainty as [to] make the rule of misnomer inapplicable." *Id.* The Court reaffirmed *Pickens Bank*'s holding and "the doctrine of misnomer" as "a wholesome doctrine." *Id.* But the Court held that the doctrine "must be

7

limited to the cases where the identity of the persons sued and against whom judgment is rendered is not doubtful." *Id.* Accordingly, in *Delta Cotton*, the Court held that, on the facts of that case, the judgment was void. *Id.*

¶17. In a more recent case, our Supreme Court discussed another "set of circumstances" in which the "doctrine of misnomer" does not apply. *D.P. Holmes Trucking LLC v. Butler*, 94 So. 3d 248, 252 (¶¶10-11) (Miss. 2012). In *D.P. Holmes Trucking*, the plaintiff "did not simply misname the defendant" but rather "sued a [party] he believed to be responsible" when, in fact, "he should have sued a different party." *Id.* at (¶11). The Court held the plaintiff was trying to substitute one real party for another real party rather than merely correct a misnomer. *Id.*

¶18. A recent decision of the Georgia Court of Appeals is also helpful and persuasive. In *Mathis v. BellSouth Telecommunications Inc.*, 690 S.E. 2d 210 (Ga. Ct. App. 2010), the plaintiff served Corporation Service Co. (CSC) with a summons directed to "AT & T Telecommunications." *Id.* at 212. The intended subject of the complaint, BellSouth d/b/a AT & T of Georgia (BellSouth), appeared and argued that service of process was improper and ineffective because "there was no such entity as AT & T Telecommunications." *Id.* However, the Georgia Court of Appeals held that service of process was sufficient and effective because the plaintiff properly served BellSouth's registered agent (CSC), and as BellSouth's registered agent, "CSC was obligated to recognize the trade names of its clients *and also to recognize some misstatements of its clients' names and to accept service, on*

8

*behalf of its clients, of lawsuits filed under such misnomers.*" *Id.* at 214 (emphasis added; quotation marks omitted).

¶19.   Based on our Supreme Court's decision in *Pickens Bank* and the persuasive reasoning of the Georgia Court of Appeals in *Mathis*, we hold that service of process in this case was sufficient to give the circuit court jurisdiction over United.  We recognize that there are some distinctions between this case and *Pickens Bank* and *Mathis*.  However, those differences do not change the outcome.  This case differs from *Pickens Bank* in that process was served on the defendant's registered agent, rather than on an employee of the defendant at its principal place of business, as in *Pickens Bank*.  However, the registered agent's basic purpose, especially in the case of an out-of-state corporation doing business in this State, is to stand in the shoes of the corporation for purposes of accepting service of process.  *See* Miss. Code Ann. § 79-35-13(a) (Rev. 2013).  For this reason, CT has an obligation "to recognize some misstatements of its clients' names and to accept service, on behalf of its clients, of lawsuits filed under such misnomers."  *Mathis*, 690 S.E.2d at 214.

¶20.   A commercial registered agent's obligation to know its clients is not limitless, but it applies in this case, when (1) the misnomer was limited to the use of "Corporation" rather than "Inc.," (2) the complaint specifically identified the former address of United's principal place of business, (3) there is nothing to suggest that the complaint or summons identified or even suggested that the defendant was some other entity that actually exists, and, perhaps most important, (4) the complaint and Exhibit A to the complaint, McCubbins's United

9

Airlines ticket and receipt, should have dispelled any confusion as to the true identity of the defendant. Under these circumstances, we conclude that service of process was proper and sufficient; therefore, the circuit court had jurisdiction, and judgment is not "void."

## II. THREE-PART BALANCING TEST

¶21. United also argues that, even if service of process was effective, the default judgment should have been set aside under Mississippi Rule of Civil Procedure 60(b) and precedent of the Mississippi Supreme Court and this Court. For the reasons that follow, we agree.

¶22. A circuit court may set aside a clerk's entry of default "for good cause shown." M.R.C.P. 55(c). However, once "a default *judgment* has been entered, a party must seek relief under Rule 60(b)." *Tucker*, 198 So. 3d at 309 (¶22) (emphasis added). "An application for vacation of a default judgment is addressed to the sound discretion of the trial court." *Id.* at (¶24) (quoting *Guar. Nat'l Ins. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)). Therefore, we review a "trial court's grant or denial of a motion to set aside . . . a default judgment for abuse of discretion. But if the trial court's decision was based on an error of law, then we will reverse." *Id.*

¶23. When ruling on a Rule 60(b) motion to set aside a default judgment, "the trial court *must* determine" and consider three factors: "(1) the nature and legitimacy of the defendant's reasons for his default, i.e., whether the defendant has good cause for default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set

10

aside." *Id.* at (¶23) (emphasis added) (quoting *BB Buggies*, 150 So. 3d at 101 (¶23)).

"Indeed, the trial court *must* employ the three-part balancing test when deciding whether to

set aside a default judgment, and this Court must strike the same balance when determining

whether the trial court abused its discretion in making that decision." *Wesley Health Sys. v.*

*Estate of Love*, 200 So. 3d 440, 446 (¶24) (Miss. 2016) (quotation marks omitted).[2]

¶24.    "[The Supreme] Court has held that trial courts should not be grudging about setting

aside a default judgment when a proper showing has been made." *Tucker*, 198 So. 3d at 309

(¶25). "Because the law does not favor default judgments, where there is a reasonable doubt

as to whether or not a default judgment should be vacated, doubt should be resolved in favor

of opening the judgment and hearing the case on its merits." *Id.* (quotation marks omitted).

"And, due to the importance of affording litigants a trial on the merits, any error made by a

trial judge should be in the direction of setting aside a default judgment and proceeding with

trial." *Id.* (quotation marks omitted).  Under the three-part balancing test, the default

judgment in this case must be set aside so that the case may be heard on the merits.

##### 1.    GOOD CAUSE

¶25.    We will assume for purposes of this appeal that United did not have "good cause" for

---

[2] In *Wesley Health System*, the Supreme Court emphasized the three-part balancing test and appeared to hold that the trial court's failure to apply the test was a per se abuse of discretion and reversible error. *See Wesley Health Sys.*, 200 So. 3d at 446-47 (¶¶23-26). The same is true in this case. Although both parties briefed and argued the three-part test in the circuit court, the circuit court's ruling did not address any of the relevant factors. We do not reverse on this ground, however, because we conclude that application of the three-part test requires that the default judgment be set aside.

11

its default. The "failure to file an answer" due to "an unintentional mistake" is not "good cause." *BB Buggies*, 150 So. 3d at 101-02 (¶24). It is true that United failed to answer because its registered agent, CT, failed to forward the summons and complaint. It is also true that CT's failure to forward the complaint is attributable to McCubbins's failure to correctly identify United. Arguably, this provides "cause" for United's failure. However, as discussed above, as United's registered agent for service of process, CT *is* United for purposes of service of process, so mistakes or failures by CT may be imputed to United. In this case, it is unnecessary to make any conclusive determination as to this factor because "lack of good cause alone will not prevent the Court from setting aside a default judgment if the other two factors weigh in favor of setting it aside." *Id.* at 102 (¶24).

## 2.    COLORABLE DEFENSE

¶26.    The Supreme Court has "held unequivocally that the second factor, the presence of a colorable defense, outweighs the other two, and [the Court has] encouraged trial courts to vacate a default judgment where the defendant has shown that he has a meritorious defense." *Id.* at (¶25) (quotation marks omitted). "A colorable defense is one that reasonably may be asserted, given the facts of the case and the current law." *Tucker*, 198 So. 3d at 312 (¶35). "A defense need not be compelling, be proven to trial standards, or be supported by sworn evidence in order to qualify as a 'colorable defense.'" *Id.* It is only necessary that the defense "be a reasonable one." *Id.* Indeed, the Supreme Court has held that "a defense of questionable strength may be colorable." *Id.* (quotation marks omitted).

12

¶27. In this case, United primarily relies on its Contract of Carriage as a colorable defense. McCubbins's eTicket stated: "Notice of Incorporated Terms - Transportation is subject to the terms and conditions of United's Contract of Carriage, which are incorporated herein by reference. . . . The full text of United's Contract of Carriage is available at united.com or you may request a copy at any United ticket counter." Rule 19(A) of United's Contract for Carriage provides in relevant part:

> Each Passenger desiring transportation across any international boundary is responsible for obtaining and presenting all necessary travel documents, which shall be in good condition, and for complying with the laws of each country flown from, through or into which he/she desires transportation. UA reserves the right to seek reimbursement from the Passenger for any loss, damage, or expense suffered or incurred by UA by reason of such Passenger's failure to do so. UA is not liable for any assistance or information provided by any employee or agent of UA to any Passenger relating to such documents or compliance with such laws, or for the consequences to any Passenger resulting from his/her failure to obtain and present such documents, which shall be in good condition, or to comply with such laws.

In addition, Rule 28(G) of United's Contract for Carriage provides:

> UA shall not be liable for any damage arising out of UA's compliance with any laws, government regulations, orders, rules, requirements or security directives or as a result of a Passenger's failure to comply with such laws, government regulations, orders, rules, requirements or security directives or as a result of Passenger's reliance on advice provided by UA regarding such laws, regulations, orders, rules, requirements or security directives. See also Rule 19.

United's Contract of Carriage was filed with the United States Department of Transportation as a "Tariff" at all times relevant to this case.

¶28. *Panzer v. Continental Airlines Inc.*, 398 F. Supp. 2d 529 (S.D. Miss. 2005), addressed

13

the effect of essentially identical provisions of another airline's contract for carriage and an essentially identical claim. In *Panzer*, the plaintiffs purchased tickets for themselves and their two minor children to fly to Costa Rica on Continental Airlines. *Id.* at 530. They "allege[d] that on more than one occasion [Continental] employees . . . informed them that a birth certificate was sufficient documentation for the two children to enter Costa Rica." *Id.* However, when the plaintiffs landed at the airport in Costa Rica, they were informed that passports were required for the children, they were not allowed to enter the country, and they "were forced to remain in the airport until the next day when they were transported back to the United States." *Id.* The plaintiffs subsequently filed suit against Continental. *Id.*

¶29. The *Panzer* court held that the plaintiffs' claims were barred by rules 19 and 28 of Continental's contract for carriage—which were substantively identical to the same rules in United's Contract for Carriage. *See id.* at 531-32. The court held that, as a matter of federal law, "[t]ariffs that are validly filed with the DOT are considered binding law between an airline and its passengers." *Id.* at 531 (collecting cases). The court also held that the contract of carriage "clearly dictate[d] that passengers, not the airline, [were] responsible for procuring proper travel documents" and that the airline was "not liable for any misinformation provided by . . . its employees regarding the requisite travel documentation." *Id.* at 532.[3] In addition, the court rejected the plaintiffs' argument "that the terms of the

---

[3] *See also Levy v. Delta Airlines*, No. 02 Civ. 477(TPG), 2004 WL 2222149, at *5 (S.D.N.Y. Sept. 30, 2004) ("It was the responsibility of the [plaintiffs], both as a matter of common sense and under [Delta's contract of carriage], to obtain for [their] child the proper

14

Contract were never 'effectively' communicated to them." The court held that "[a]n airline passenger is deemed to have constructive knowledge of a tariff that has been properly filed with the DOT." *Panzer*, 398 F. Supp. 2d at 532. Moreover, as in this case, the plaintiffs' eTicket alerted them to additional terms and conditions and incorporated by reference the contract for carriage. The district court observed that "[p]ursuant to federal regulation, 'a ticket or other written instrument that embodies the contract of carriage may incorporate contract terms by reference . . . .'" *Id.* (quoting 14 C.F.R. § 253.4).

¶30.    There is no material difference between *Panzer* and this case. Moreover, McCubbins fails to address *Panzer* or the relevant provisions of the Contract of Carriage.[4]  At oral

travel documents. [They] had no right to rely on a Delta ticket agent in connection with this subject."); *Williams v. Nw. Airlines Inc.*, 163 F. Supp. 2d 628, 631 (W.D.N.C. 2001) ("Basically, federal law provides that international carriers are not assurers of their passengers' compliance with the various international laws concerning entry. The duty, as it should be, is placed solely on the passengers."); *Seisay v. Compagnie Nationale Air France*, No. 95 Civ. 7660(JFK), 1997 WL 431084, at *4 (S.D.N.Y. July 30, 1997) (holding that under the applicable tariff "it was solely [the passenger's] obligation to obtain [necessary travel] documents," and "under the terms of the tariff, [the airline was] not liable for breach of contract").

    [4] McCubbins asserts that Judge Jordan's order remanding this case to state court (*see supra* note 1) rejected United's argument based on the Contract of Carriage. This assertion conflates two distinct issues. Judge Jordan ruled that federal question jurisdiction did not exist because McCubbins's claims were not *completely* preempted by the Airline Deregulation Act or the Montreal Convention. A *defense* based on federal law does not provide a basis for removal. *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). However, the Supreme Court has held that purely state-law claims, such as McCubbins's, may be removed to federal court "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Id.* at 8. United argued that the Airline Deregulation Act and the Montreal Convention completely preempted McCubbins's claims and thereby granted the federal court jurisdiction over the case. Judge Jordan rejected United's *jurisdictional* arguments; however, he did not address, let alone reject, United's

15

argument, McCubbins's counsel stated that this Court is not "bound" by *Panzer*. It is true that we are not bound by *Panzer* or similar decisions of other federal district courts. *See supra* n.3. However, at this stage, United is not required to show that its defense is dispositive or unassailable. United is only required to show that it has a "colorable" defense. As stated above, "even a defense of questionable strength may be colorable" if it is a "reasonable" defense. *Tucker*, 198 So. 3d at 312 (¶35); *see also Olive v. Malouf*, 94 So. 3d 1254, 1257 (¶13) (Miss. Ct. App. 2012) (stating that a defendant is not required to show that it is "likely to prevail" in order to establish a "colorable defense" (quoting *Leach v. Shelter Ins.*, 909 So. 2d 1283, 1287 (¶13) (Miss. Ct. App. 2005)). United's Contract of Carriage, related federal law, and the on-all-fours opinion in *Panzer* provide at least a "reasonable" or "colorable" defense to McCubbins's claims.

### 3.     PREJUDICE

¶31.    "[T]he extent of prejudice to the opposing party is a relevant consideration when ruling on a motion to set aside an entry of default [or a default judgment]." *Tucker*, 198 So. 3d at 316 (¶46). "However, the plaintiff's need to litigate the claims in the event a default judgment is set aside is not grounds for a finding of prejudice." *Id.* (citing *BB Buggies*, 150 So. 3d at 104 (¶31)). McCubbins fails to identify any other type of prejudice that he would experience if the default judgment is set aside.[5] Accordingly, the lack of prejudice also

_____

defense on the merits based on the terms of its Contract of Carriage.

[5] McCubbins argues that the general "delay" since the incident amounts to prejudice. However, McCubbins himself waited almost two years after the incident to file the lawsuit.

16

weighs in favor of setting aside the default judgment.

¶32.    "Two of the three factors—colorable defense and prejudice—weigh in favor of [United] and, thus, in favor of setting aside the default judgment.  Therefore, we hold that the trial court abused its discretion in failing to set aside the default judgment.  The default judgment against [United] is set aside, and the case is remanded for proceedings consistent with the instant opinion." *BB Buggies*, 150 So. 3d at 105 (¶37).

## CONCLUSION

¶33.    Service of process on United's registered agent was proper and sufficient; therefore, the judgment was not void, and the circuit court properly refused to dismiss the case due to improper service of process.  However, for the reasons discussed above, the default judgment must be set aside so that the case may be heard and decided on its merits.  Therefore, the judgment of the circuit court is reversed and the case is remanded for further proceedings consistent with this opinion.

¶34.    **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.  BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

*See BB Buggies*, 150 So. 3d at 104 (¶33) (plaintiffs cannot claim prejudice based on their own delay in filing suit).  After learning of the default judgment against it, United promptly removed the case to federal court and simultaneously moved to set aside the default judgment. *See supra* n.1.  While the removal to federal court and remand to state court took some time, there is no showing that the removal was frivolous or undertaken for purposes of delay.

17