# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-00035-COA

ANNIE L. JUMPER                                                    APPELLANT

v.

OLIVE BRANCH FAMILY MEDICAL CLINIC,                    APPELLEES
EDWARD ELDRED, M.D., CHARLA WILSON,
FNP, AND ULRIC DUNCAN, M.D.

DATE OF JUDGMENT:              12/13/2018
TRIAL JUDGE:                  HON. GERALD W. CHATHAM SR.
COURT FROM WHICH APPEALED:    DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       DANIEL M. CZAMANSKE JR.
ATTORNEYS FOR APPELLEES:      TOMMIE GREGORY WILLIAMS JR.
                              TOMMIE G. WILLIAMS
                              KEVIN O'NEAL BASKETTE
NATURE OF THE CASE:           CIVIL - MEDICAL MALPRACTICE
DISPOSITION:                  AFFIRMED - 11/03/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE WILSON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.     Annie L. Jumper appeals from the judgment of the DeSoto County Circuit Court, claiming the trial judge erred by granting summary judgment to Dr. Ulric Duncan and denying her motion for a new trial. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2.     In January 2012, the Olive Branch Family Medical Clinic (OBFMC) referred Jumper to Dr. Ulric Duncan, a gastroenterologist with the Delta Gastroenterology Center. On January 5, 2012, Jumper visited the Delta Gastroenterology Center. On this visit, Jumper was seen

by nurse practitioner Mary Grant.[1] Jumper's complaint involved abdominal pain, specifically, epigastric pain, and significant weight loss. On January 6, 2012, Jumper returned to OBFMC, and the clinic ordered and performed a blood test on Jumper. The results showed a blood-sugar level of 308. Several medical providers testified during depositions and trial that blood sugar results in this range usually indicate a sign of diabetes. According to OBFMC, after receiving the results, their nurse contacted Jumper via telephone on January 16, 2012. The nurse testified she notified Jumper of the results and the need for further testing. Jumper disputed at trial whether OBFMC informed her of these results.

¶3.     Jumper also continued her appointments at the Delta Gastroenterology Center. Dr. Duncan performed several invasive procedures through September 2012.[2] Dr. Duncan acknowledged that he never ordered Jumper's blood to be drawn, nor did he test for diabetes during the time he treated her even though Jumper's family history reported a history of diabetes.

¶4.     In September 2012, Jumper was hospitalized at Baptist Memorial Hospital-DeSoto as a result of deep-vein thrombosis. Test results from Baptist indicated that Jumper had high blood-glucose levels and that her hemoglobin A1C was greater than 12. According to Baptist, these test results showed that Jumper's blood sugar had been uncontrolled for at least six months.

---

[1]Although Jumper was scheduled to consult with Dr. Duncan, he did not see or treat her on January 5, 2012.

[2] It is unclear from the record exactly when and what invasive procedures Dr. Duncan performed on Jumper between January 2012 and September 2012.

¶5.    Shortly after her hospitalization, Jumper filed a complaint in the DeSoto County Circuit Court against OBFMC, Dr. Edward Eldred and Nurse Charla Wilson of OBFMC, and Dr. Ulric Duncan of the Delta Gastroenterology Center. She alleged that the defendants deviated from the applicable standard of care by failing to diagnose her with diabetes. Jumper claimed this deviation resulted in the exacerbation of dental and eye problems, worsening of her diabetic condition, and vascular injuries. Jumper did not sue the nurse practitioner Mary Grant or Delta Gastroenterology Center.

¶6.    Dr. Duncan filed a motion for summary judgment on January 27, 2015. His motion asserted that Jumper failed to identify an expert to provide proof as to the elements required to prove a medical negligence claim. Soon after, Jumper designated Dr. Fred Sutton as her expert witness. Dr. Sutton stated that "at a minimum," the deviation from the standard of care occurred on January 5, 2012, by not ordering a blood test. Based on Dr. Sutton's depositions and affidavit, Dr. Duncan supplemented his motion for summary judgment, asserting that nurse practitioner Mary Grant saw Jumper on January 5, 2012, and therefore, he was not liable. The trial court agreed and granted summary judgment to Dr. Duncan.

¶7.    The remaining defendants, OBFMC and Nurse Charla Wilson proceeded to trial. Before the commencement of trial, Jumper filed a motion in limine to prevent OBFMC and Nurse Wilson from mentioning "any other medical provider" and placing any duty or blame on Dr. Duncan for failing to diagnose Jumper's diabetes. Specifically, Jumper aimed to stop OMFMC and Nurse Wilson from "pointing the finger at an empty chair." The trial court denied this motion but limited the defendants' cross-examination. At trial, on cross-

examination, the defendants were allowed to introduce evidence regarding Dr. Duncan's alleged breach of the standard of care through Jumper's expert witness. The trial judge limited the defendants' evidence regarding Dr. Duncan's alleged negligence to all dates after, but not including, January 5, 2012. On November 26, 2018, the jury returned a verdict in favor of the remaining defendants, OBFMC and Nurse Wilson.

¶8.     Jumper timely filed a motion for a new trial. She claimed that OBFMC and Nurse Wilson should have been prohibited from alleging that Dr. Duncan was liable or breached the standard of care since they did not oppose Dr. Duncan's motion for summary judgment. The trial court denied Jumper's motion.

¶9.     Jumper now appeals, arguing the trial court erred in granting summary judgment in favor of Dr. Duncan and denying her motion for a new trial.

**DISCUSSION**

### I.     Summary Judgment

¶10.    The granting of summary judgment by a trial court is reviewed de novo. *Howard v. Rolin Enters. LLC*, 284 So. 3d 772, 775 (¶5) (Miss. Ct. App. 2019). The evidence is reviewed in the light most favorable to the non-moving party. *Parson v. Go Knightrider LLC*, 282 So. 3d 609, 613 (¶14) (Miss. Ct. App. 2019). Mississippi Rule of Civil Procedure 56 requires summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). At the summary judgment stage, the non-movant "carries the burden of producing

4

sufficient evidence of the essential elements of his claim as he would at trial." *Parson*, 282 So. 3d at 614 (¶14). Summary judgment is proper if a non-movant fails to meet this burden. *Id*. (Summary judgment is appropriate when the non-movant fails "to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial.").

¶11. The trial court held that Jumper failed to present sufficient evidence to establish a prima facie case of medical negligence in granting Dr. Ulric Duncan a summary judgment. We agree.

¶12. Under Rule 56 of Mississippi Civil Procedure, "a party against whom a claim . . . is asserted . . . may, at any time, move with or without supporting affidavits for summary judgment . . . ." M.R.C.P. 56(b); *see also Johnson v. Pace*, 122 So. 3d 66, 68 (¶8) (Miss. 2013). The movant must show the court that they are entitled to judgment as a matter of law because no genuine issue of material fact exists. *Webb v. Forrest Gen. Hosp.*, 301 So. 3d 695, 706 (¶40) (Miss. Ct. App. 2020).

¶13. In a medical-malpractice case, the burden is placed on the plaintiff to provide proof at trial and, in turn, at the summary judgment stage. *Johnson*, 122 So. 3d at 68 (¶8). Therefore, the plaintiff must also offer significant and probative valued evidence to overcome a defendant's claim that no genuine issue of material fact exists at the time of summary judgment. *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990). Specifically, the evidence must show the defendant breached "the established standard of care" and that the "breach was the proximate cause of [the plaintiff's] injury." *Id*.

¶14.  A plaintiff cannot defeat a motion for summary judgment by depending solely on their unsworn pleading allegations and denials. *Webb*, 301 So. 3d at 706 (¶40); *Palmer*, 564 So. 2d at 1356 ("Mere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment."); *see also Magee v. Transcontinental Gas Pipe Line Corp.*, 551 So. 2d 182, 186 (Miss. 1989) (finding that a "plaintiff may not rely solely upon the unsworn allegations in the pleadings, or arguments and assertions in briefs or legal memoranda") (internal quotation mark omitted)). Definitive facts must be brought by the party opposing the motion to show, by affidavit or otherwise, that a genuine issue for trial remains. *Palmer*, 564 So. 2d at 1356. To do this, an "affidavit or otherwise" must be "(1) be sworn; (2) be made upon personal knowledge; and (3) show that the party providing the factual evidence is competent to testify." *Id.*; M.R.C.P. 56(e).

¶15.  In a medical malpractice action, a plaintiff who is on notice of a defendant's motion for summary judgment must clearly prove (1) a duty existed to conform to a specific standard of care; (2) the defendant failed to conform to the required standard; and (3) that the breach of duty was a proximate cause of the plaintiff's injury. *Miss. Baptist Med. Ctr. Inc. v. Phelps*, 254 So. 3d 843, 845 (¶6) (Miss. 2018). Expert testimony is typically required to establish these elements and survive summary judgment. *Johnson*, 122 So. 3d at 68 (¶8). In particular, the expert must "identify and articulate the requisite standard that was not complied with," and the expert must "establish that the failure was the proximate cause, or proximate contributing cause, of the alleged injuries." *Id.*; *Barner v. Gorman*, 605 So. 2d 805, 809 (Miss. 1992).

6

¶16. The trial court found that Dr. Sutton's medical affidavit and depositions were insufficient to establish that Dr. Duncan deviated from the standard of care, that any negligence was attributable to Dr. Duncan, or that any deviation was the proximate cause of Jumper's injury. The trial court examined the testimony of Dr. Sutton, who stated that "at a minimum," Dr. Duncan diverged from the standard of care on January 5, 2012, by not ordering a blood test. The court noted that no proof was given by affidavit or at the summary judgment hearing that Dr. Duncan had treated Jumper on January 5, 2012.

¶17. Jumper argues that testimony about the medical bills bearing Dr. Duncan's name established that he treated her, and therefore, proximately caused her injury. However, Mississippi law states that "medical bills [are] not prima facie evidence." *Downs v. Ackerman*, 115 So. 3d 785, 790-91 (¶18) (Miss. 2013) ("[A plaintiff's] medical bills established a presumption that those bills were reasonable and necessary for the treatment of her injuries, her medical bills were not prima facie evidence that the accident was a proximate cause of [her] injuries.").

¶18. As in *Downs*, Jumper's medical document[3] and bills from January 5 are not enough to prove that Dr. Duncan treated Jumper on that particular day. Furthermore, in his depositions, counsel asked Dr. Duncan how he determined which patients were seen by him as opposed to his nurse practitioner, Mary Grant. Dr. Duncan explained that if he met with a patient, the medical document would contain his electronic signature. Jumper's documents lacked this electronic signature.

---

[3] Jumper's medical document for January 5, 2012, states she was "attended by" Dr. Ulric Duncan, but it lacked his electronic signature.

¶19. When an expert's testimony fails to establish each element of the plaintiff's claim, summary judgment is proper. *Miss. Baptist Med. Ctr. Inc. v. Phelps*, 254 So. 3d 843, 845 (¶7) (Miss. 2018). Dr. Sutton's testimony did not establish the requisite elements of medical malpractice on any other visit either. The trial court properly granted summary judgment in this case. Therefore, this issue is without merit.

## II. New Trial

¶20. The denial of a motion for a new trial is reviewed for abuse of discretion. *Wilty v. Alpha*, 99 So. 3d 830, 834 (¶23) (Miss. Ct. App. 2012). Whether to grant or deny a new trial motion is within the discretion of the trial court. *Anchor Coatings Inc. v. Marine Indus. Residential Insulation Inc.*, 490 So. 2d 1210, 1215 (Miss. 1986). The motion for a new trial should only be granted if the trial court, upon review of the entire record, finds that a miscarriage of justice has occurred. *Id.*

¶21. Jumper claims the trial court erred by denying her motion for a new trial. Specifically, Jumper claims the trial court erred by allowing OBFMC and Nurse Wilson to provide evidence at trial as to Dr. Duncan's alleged breach of the standard of care by way of her expert, Dr. Sutton. She argues that by allowing OBFMC and Nurse Wilson to introduce this evidence during cross-examination, the trial court permitted the Defendants to "point the finger at an empty chair."

¶22. Similarly, an abuse-of-discretion standard also applies to the admission or exclusion of evidence. *Manhattan Nursing & Rehab. Ctr. LLC v. Pace*, 134 So. 3d 810, 816 (¶21) (Miss. Ct. App. 2014). Unless a substantial right is adversely affected, an error involving an

8

admission or exclusion of evidence will not be reversed. *Id.*; *see also United Servs. Auto Ass'n v. Lisanby*, 47 So. 3d 1172, 1179 (¶25) (Miss. 2010).

¶23. The boundaries of cross-examination fall mostly within the court's discretion, as does the power to limit the examination to relevant issues. *Fishboats Inc. v. Welzbacher*, 413 So. 2d 710, 719 (Miss. 1982). However, this discretion must operate within the perimeters of the Mississippi Rules of Evidence and Mississippi substantive law. *Id*.

¶24. Mississippi Rule of Evidence 611(b) provides the scope of cross-examination. Rule 611(b) states, "The court may not limit cross-examination to the subject matter of the direct examination and matters affecting the witness's credibility." M.R.E. 611(b). Therefore, Rule 611(b) permits "wide-open" cross-examination as long as the matter is relevant. *Ambrose v. State*, 254 So. 3d 77, 102 (¶56) (Miss. 2018).

¶25. When the subject matter of questioning has no relevance, the trial judge is within his discretion to narrow the extent of cross-examination. *Wesley Health Sys. LLC v. Est. of Love*, 200 So. 3d 440, 445 (¶17) (Miss. 2016). In the present case, Dr. Duncan was dismissed as a party during the summary judgment stage because he was not the treating physician on January 5, 2012. Therefore, any information or evidence regarding the events of January 5, 2012, was irrelevant. The trial court was within its discretion to limit the cross-examination to all visits outside that particular date.

¶26. Jumper argues that OBFMC and Nurse Wilson should not have been able to mention Dr. Duncan's alleged fault at trial. By doing so, they were placing blame on an "empty chair" or a third party no longer apart of the action. However, the idea of apportionment is well-

rooted in Mississippi law. Tortfeasors, even those that are absent, "must be considered by the jury when apportioning fault," if they contributed to a plaintiff's injuries. Miss. Code Ann. § 85-5-7(7) (Rev. 2011); *Smith v. Payne*, 839 So. 2d 482, 486 (¶14) (Miss. 2002).

¶27. While Jumper did not seek to apportion fault at trial, the Defendants did. OBFMC and Nurse Wilson sought to apportion fault to Delta Gastroenterology's provider, Dr. Duncan. The trial court, however, refused and only allowed fault to be apportioned amongst the remaining Defendants.

¶28. At trial, Dr. Sutton, Jumper's expert, was accepted, deposed, and he testified. OBFMC and Nurse Wilson were allowed to rely on his opinions as to Dr. Duncan's negligence, just as Jumper was. Furthermore, one cannot complain on appeal as to evidence that they themselves brought out at trial. *Fleming v. State*, 604 So. 2d 280, 289 (Miss. 1992). Dr. Sutton testified as an expert in internal and gastroenterology medicine. At trial, Jumper's attorney elicited, and Dr. Sutton provided, an opinion regarding Dr. Duncan's actions and possible breach of care outside of the January 5, 2012 date. It is well established that one who "opens the door" to a particular issue takes a chance that unfavorable information may enter. *Murphy v. State*, 453 So. 2d 1290, 1294 (Miss. 1984) (A defendant who "opens the door" to a particular issue runs the risk that collateral, irrelevant, or otherwise damaging evidence may come in on cross-examination.).

¶29. Cross-examination is one of the law's most useful weapons in fighting deception and finding the truth. *Prewitt v. State*, 156 Miss. 731, 126 So. 824, 825 (1930). The trial court properly allowed a "wide-open" cross-examination of Jumper's expert and properly limited

the admission of evidence to relevant matters. Therefore, this issue is without merit.

## CONCLUSION

¶30.    There being no reversible error, the judgment is **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR.  McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**